CASE 2—PETITION—MARCH 8.

# Deposit Bank of Georgetown v. Fayette National Bank.

APPEAL FROM FAYETTE CIRCUIT COURT.

BANKS—PAYMENT OF FORGED CHECKS.—A bank is bound to know the signatures of its depositors, and if it pays a forged check drawn upon it to an innocent holder, who has paid full value for the check, it can not afterward recover the money of him; but even if such were not the general rule, the bank in this case would be liable, as the forged checks, eighteen in number, were paid from time to time during a period of near five months before the forgeries were discovered.

WM. LINDSAY AND ALVIN DUVALL FOR APPELLANT.

Where a bank receives a forged check drawn upon another bank, and obtains the money upon it from the drawee, the drawee, having acted in good faith, may, after discovery of the fraud and forgery, recover back the money from the bank to which the payment was made. (First Nat. Bank v. State Bank, 22 Neb., 769; Bank North America v. Bangs, 106 Mass., 441; Espey v. Bank of Cinninnati, 18 Wall., 614; Ellis v. Ohio Ins. Co., 4 Ohio, 628; Daniel on Negotiable Instruments, vol. 2, sec. 1362.)

BRECKINRIDGE & SHELBY on same side.

1. The general rule is, that money paid under a mistake of fact may be recovered back.

> The following authorities furnish illustrations of the application of the rule to payments made by mistake upon *commercial paper:* Canal Bank v. Bank of Albany, 1 Hill, 287; Nat. Bank of Commerce v. Nat. Mechan. Banking Assoc., 55 N. Y., 211; Leading Article, 9 Amer. Law Review, 411; Meredith v. Haynes, 19 Cent. Law J., 133.
>
> Negligence on the part of the party paying will not defeat a recovery. (Nat. Bank of Commerce v. Nat. Banking Assoc., 55 N. Y., 211; Meredith v. Haynes, 19 Cent. Law Journal, 133; Kelly v. Solan, 9 M. & W., 54; Lawrence v. Amer. Nat. Bank, 54 N. Y., 432.)

2. The true test of recovery is not whether the party paying has been guilty of negligence, but whether, in good conscience and fair dealing, he should be estopped to show his mistake on account of the loss which would be thereby occasioned to the other party; and if this be the true principle, the rule is as applicable to cases of mistake on the part of the drawee *concerning the drawer's signature as to other cases.* (Daniel on Negotiable Instruments, sec. 1361 *et seq.; Ia.*, secs. 1655 (a) *et seq.;* Chitty on Bills, cited in note to section 1362 of Daniel on Negotiable Instruments; 2 Parsons on Notes and Bills, pp. 80-81; 9 Am. Law Review, p. 432; McKlerry v. Bank, 14 La. Ann., 458; Bank v. Bangs, 8 Am. Rep., 349; Ellis v. Ohio I. & T. Co., 4 Ohio St., 628, 659.)

3. Payment to a holder of commercial paper claiming under a *forged indorsement* may be recovered upon the ground that he had no title to the instrument, and no right to receive any thing upon it. (Canal Bank v. Bank of Albany, 1 Hill, 287; Daniel on Negotiable Instruments, sec. 1358.)

> In these cases the defendant bank claimed title under the forged indorsement of the name of the fictitious payee, the fraudulent indorsement of the fictitious name by Wolfe being a forgery. (Daniel on Negotiable Instruments, sec. 136.)

4. Notice of the mistake was given in time. (Canal Bank v. Bank of Albany, 1 Hill, 287; Note Laborde v. Consolidated Assoc., 39 Am Dec., 525, and cases there cited.)

J. D. HUNT for appellees.

1. A bank is bound to know the signature of its depositors. Therefore, when a bank pays a forged check drawn on itself to a *bona fide* holder guilty of no actual fault or negligence contributing to the mistake, it must bear the loss; and this rule obtains, no matter how soon the forgery is discovered and demand made for repayment. (Price v. Neal, 3 Burrows, 1354; Smith v. Mercer, 6 Taunt., 76; Cox v. Masterman, 9 B. & C., side page 902, top page 398; Levy v. U. S. Bank,

4 Dallas, 234; Bank of Georgia v. Bank of U. S., 10 Wheat., 333, 354; National Park Bank v. Ninth National Bank, 46 N. J., 81 (7 Am. Rep., 310); Gloucester Bank v. Salem Bank, 17 Mass., 33; Morse on Banking, page 327, &c.; 2 Daniel on Negotiable Instruments, secs. 1359, &c., 1654, &c.; note to 39 Am. Dec., p. 521; Leather Manufacturers' Bank v. Morgan, 117 U. S., 118; Cook v. United States, 91 U. S., 389, 396; Bank St. Albans v. Farmers', &c., Bank, 10 Vt., 141; Bernheimer v. Marshall, 2 Minn., 78; First Nat. Bank v. Ricker, 71 Ill., 439.)

2. The case of money paid by a banker on the forged check of a depositor is admitted, even by those authorities which favor the admission of qualifications or exceptions to the rule of commercial law as ordinarily applied, as an exception to the ordinary equitable rule that money paid under a mistake of fact may be recovered. (Ellis v. Ohio Ins. & Trust Co., 4 Ohio St., 628.)

It is also one of the ordinary qualifications of this rule that even in cases where the plaintiff is without fault money paid by mistake can not be recovered if, by reason of a change of circumstances, the defendant would be in a worse situation than if the payment had not been made. (2 Smith's Leading Cases, 465, citing Cox v. Masterman, 9 B. & C., 902; Clark v. Dixon, E., B. & E., 148.)

And the fact that no damage has arisen by the delay must be clearly made to appear, the presumption being that the delay has caused damage. (2 Daniel on Negotiable Instruments, 1372; Morse on Banking, 341; Smith v. Mercer, 6 Taunt., 76; 2 Parson's Notes and Bills, 80, cited in 2 Daniel's Negotiable Instruments, section 1655 (a) note 5.)

In this case plaintiff's fault in failing to detect the forgery of the first check not only rendered its recovery from the forger impossible, but rendered possible, and induced, the presentation of other similar forged writings.

But outside of this manifest proof of damage to defendant in the event of recovery by plaintiff, the delay itself imports a damage. (Leather Manufacturers v. Morgan, 117 U. S., 118.)

3. There is no distinction between the case of a holder before and after acceptance. (Bank U. S. v. Bank of Georgia, 10 Wheat., 349; Price v. Neal, 3 Burr., 1654; Smith v. Mercer, 6 Taunt., 76; Levy v. U. S. Bank, 4 Dallas, 634; National Park Bank v. Ninth National Bank, 46 N. Y., 81; Gloucester Bank v. Salem Bank, 17 Mass., 33.)

4. Even if the names of the payees were fictitious, in the proper sense of that term, any holder of the paper had the right to treat it as payable to bearer. In any event, the defendant's title to the checks was perfect, and acting as it did, in good faith and without negligence, that was all it became responsible for in presenting the checks and receiving payment of them. (Morse on Banking, pp. 254 and 255; 1

Deposit Bank of Georgetown v. Fayette National Bank.

Daniel Neg. Inst., secs. 136-141; Coggill v. Am. Exch. Bank, 1 Comstock, N. Y., 113; Pletts v. Johnson, 3 Hill, 112; Am. Law Review, April, 1875, p. 411, &c.; Morse on Banking, 337, 338; Hartman v. Henshaw, 11 Howard (U. S.), 177; Meacher v. Fort, 3 Hill (S. C.), 227.)

BECK & THORNTON ON SAME SIDE.

1. The banker is bound to know the handwriting of his customer; the drawee is bound to know the signature of his drawer. Price v. Neal, 3 Burr., 1354; Bank of U. S. v. Bank of Georgia, 10 Wheat., 333; Levy v. Bank of United States, 4 Dallas, 234; 1 Burney, 36; National Park Bank v. Ninth National Bank, 46 N. Y., 77; Smith v. Mercer, 6 Taunt., 76; Gloucester Bank v. Salem Bank, 17 Mass., 43; Bank of Commerce v. Union Bank, 3 Comstock, 235; Morse on Banks and Banking, p. 327; Hoffman & Co. v. Bank of Milwaukee, 12 Wall., 193; Horseman v. Henshaw, 11 How., 177.)

2. A party who demands repayment of money paid under a forged indorsement, or under a forged signature of the drawer of the bill, should make the demand with great promptitude, and unless the forgery is discovered, notice given and demand made within twenty-four hours, he can not recover. (Cocks v. Masterman, 9 B. & C., side page 902; Smith v. Mercer, 6 Taunt., 76; Levy v. Bank of United States, 4 Dallas, 234; Bank of U. S. v. Bank of Georgia, 10 Wheat., 333.)

3. A bill or check drawn payable to a fictitious payee is, in the hands of a *bona fide* holder, who acquired it in ignorance of the fact, in effect a bill or check payable to bearer, and may be treated by him as such. (Tatlock v. Harris, 3 Term Rep., 174; Vere v. Lewis, 3 Term Rep., 182; Minet v. Gibson, 1 H. Blackstone, 569; Morse on Banks and Banking, 254; Daniel on Negotiable Instruments, vol. 1, secs. 136-140.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

These two cases involve similar questions, and have, therefore, been considered as one case.

The Deposit Bank of Georgetown, the appellant in this court, and the plaintiff below, paid a number of forged checks, purporting to have been drawn on that bank by one of its depositors, Thomas I. Burgess. The checks were successively presented through a period of four or five months, there being eighteen

in number, and were all paid by the Georgetown bank in good faith, and before any discovery of the fraud had been made. All the checks were drawn in the name of Thomas I. Burgess, who was a regular depositor and customer of the bank, the first check having been paid early in December of the year 1883, and the last check paid in April, 1884. The name of Burgess was discovered to be a forgery on the seventh of May, and notice given to the appellees, the two banks to whom the checks were presented and paid, on the ninth of that month.

John R. Wolfe, who had committed all these forgeries, had, at one time, been a clerk in the bank of the appellant, and was in that way familiar with the count and deposits of Burgess. The checks purported to be drawn by Thomas I. Burgess in favor of Williamson & Wolfe on the appellant, and were presented to the two Lexington banks by John R. Wolfe (the forger), and payment asked of these banks. The Fayette National Bank, before advancing the money on the first check, made inquiry as to the account of Burgess, and receiving a satisfactory response, upon the indorsement made by Williamson & Wolfe, paid over the money. Wolfe was identified, and no reason on the part of the Fayette National Bank existed for indulging a suspicion as to the *bona fides* of the transaction. There were sixteen checks in all taken up by this bank, and forwarded to the drawee, the appellant. They were taken in the usual course of business, and when sent to the Georgetown bank, charged to the account of its depositor, Burgess. There was, in fact, no such firm as William-

son & Wolfe, but the fictitious firm name used by Wolfe in the perpetration of his forgeries. Both the appellant and the appellees acted in good faith, the former believing that Burgess was, in fact, the drawer of the paper, and the latter advancing its money on the checks, supposing (Wolfe having been identified) that it would be paid, as it was, by the Georgetown bank, and charged to the account of the drawer. Which of the banks should lose this money : The bank at Georgetown, where the depositor, Burgess, whose name had been forged, deposited his money, or the banks at Lexington, where the money was paid to Wolfe, under the belief that the checks were genuine, and Burgess, in fact, the drawer?

It is evident that the bank at Georgetown honored the checks drawn· upon it by Burgess, for the reason that its officers believed the name of the drawer was genuine; and if the liability of the Lexington banks to refund this money is to be determined by the well known rule of law applicable to the payment of money through a mistake of fact, the judgment in this case is erroneous.

It is insisted, however, that it is a rule of commercial law, long since recognized, and now.firmly established, applicable at least between parties equally innocent of the fraud, that the bank, or its officers, must know the signature of its depositor; and if such a doctrine is made to apply in this case, the appellant is the loser, and the judgment dismissing its petition was proper.

The rule laid down by Lord Mansfield is, that if the banker or drawee makes a payment, or gives credit, upon the strength of a forged signature, the loss must

be his as between himself and the holder. "He has
not known what he is bound to know." (Price v.
Neal, 3 Bur., 1355.)

This doctrine of commercial law has been followed
and recognized by nearly all the courts of the coun-
try, and, as said by Mr. Justice Story, in the case of
the Bank of United States v. Bank of Georgia, 10
Wheaton, 333, delivered in 1825, has never been de-
parted from, and in the earlier cases on the subject,
able jurists, in alluding to this rule, regarded it as
essential as a rule of justice and right between busi-
ness men.

Mr. Morse, in his work on Banks and Bank-
ing, vol. 2, § 463, has collated the authorities, and
presented what he terms the modern doctrine on
this subject; but after a careful examination of
the authorities referred to, it will be found that the
decided weight of authority is with Lord Mans-
field, and the rule laid down in Price against Neal
is criticized only as being too sweeping in its char-
acter; nor is it just to say that the rule adopted
requiring the bank to know the signature of its de-
positor is without an exception, for it is undoubtedly
true that the neglect or knowledge of intervening par-
ties, who come into the possession of the check, and
receive the money on it from the bank where it is paya-
ble, will, in some instances, be of such a character as
to enable the bank to recover back the money. This
doctrine is recognized by Mr. Daniel in his work on
Negotiable Instruments, and while doubting the justice
of the rule recognized by nearly all the authorities
under which the bank is required to know the signa-

ture of its depositor, he proceeds to say "that when one knows that it is a forgery, or takes it under circumstances of suspicion, without proper precaution, or whose conduct has been such as to mislead the bank," the money may be recovered back. (Daniel on Negotiable Instruments, vol. 2, page 669.)

The case of the National Bank of North America v. Bangs, reported in 106 Mass., 441, and relied on by counsel for the appellant in this case, was where one, a stranger, giving his name as William D. Riskford, drew his check, payable to the order of E. D. & G. W. Bangs, on the National Bank of North America  Bangs indorsed the check, and the bank paid the money, and when discovering the forgery notified Bangs, the payee and indorser, and sued to recover the money back, and a judgment was obtained. This, we think, was proper, as it would be an exceedingly harsh rule to permit one who negotiates with the forger, and obtains his check payable to the use of the party advancing the money, who then indorses it to a bank, to hold on to the money when the payee has himself contracted with the forger, and given credit to the paper by his indorsement that led the bank to believe the paper was genuine. The case of Ellis v. The Ohio Insurance Trust Company, reported in 4 Ohio State, 628, sustains this view of the question.

The case relied on is unlike the case before us. The banks at Lexington took the checks in the usual course of business, with the indorsement of the payee, and then indorsed the paper for collection, forwarding it to appellant's bank, where the money was credited to the Lexington banks. and charged to the account of the one supposed to be the *bona fide* drawer of the paper.

In the case relied on, of the National Bank of North America .v. Bangs, it is said : "If the suit were between the bank or drawee and a party who took the check in the usual course of business, finding it in circulation, or even by first indorsement from the payee, the loss would fall on the bank, because, having the greater means and opportunity to become familiar with the handwriting of their correspondents or depositors, the law presumes that drawees will know these signatures, and be able to detect forgeries.   *   *   *   But this responsibility, based upon presumption alone, is decisive only when the party recovering the money has in no way contributed to the success of the fraud, or to the mistake of fact under which the payment was made."

There is a manifest distinction between the case of one who is both the payee and indorser of the check, and who negotiates directly with the forger in the loan or advance of the money for which the check is given, and a bank taking a check by indorsement from the payee in the usual course of business, with no ground of suspicion, and that receives the money on the check from a bank where the funds of the drawer are deposited.   One of the two innocent parties must suffer, and there must be some rule of commercial law to guide banks and business men in this character of business transactions.   Therefore, when a bank has the means of knowing the signature of the drawer of a check upon it by reason of the drawer being its depositor or customer, the relation between the bank and the depositor is such that the bank must be presumed to know that the signature is genuine when making payment.

The case of Ellis & Morton v. Ohio Life Trust Company, reported in 4 Ohio State, 628, recognizes this rule, and says the foundation for it is: "The party is supposed to know his own handwriting in the one case, or that of his customer or correspondent in the other, much better than the holder can, and the law, therefore, allows the holder to cast upon him the entire responsibility of determining as to the genuineness of the instrument, and if he fails to discover the forgery, imputes to him negligence, and, as between him and the innocent holder, compels him to suffer the loss." After conceding the general doctrine on the subject, the court proceeds to say that the holder may, by his negligent conduct, deprive himself of the benefit of this rule; and that case was decided upon the ground that the holder had contributed to induce the payee to believe the paper was genuine. All the cases cited in the text-books, or relied on by the appellant, while they criticise the rule as harsh, only make the particular case under consideration an exception to the rule, and permit the recovery by the drawee for the reason that the holder of the paper receiving the money was himself neglectful and caused the loss, or by his conduct made the drawee believe the paper was genuine. These cases are exceptions to the rule; but all recognize the doctrine that where the parties are equally innocent, the drawee paying the money must suffer the loss. The two cases, one found in 22 Neb., 769, of the First National Bank of Orleans against the State Bank of Alma, the other of People's Bank v. Franklin Bank, 88 Tenn., 297, go further in discarding the rule than any cases to which our attention has been called; but in

those cases the banks upon which the checks were drawn were permitted to recover upon the ground that the banks paying the check had neglected to make the proper inquiry as to the identity of the holder, who was a stranger, and that this was such a want of precaution as deprived the bank advancing the money of any superior equity as against the bank upon which the check was drawn. The court expressly says, in the Nebraska case, that the loss may, therefore, be traced directly to the negligence of the plaintiff in error. Whether the facts of those cases justified the conclusion reached is not necessary to inquire, as, after a careful review of all the authorities, it is found that the general doctrine fixing the liability on the drawer in such cases is fully sustained.

In the case of Espey v. Bank of Cincinnati, reported in 18 Wall., 604, the money was paid on a raised check, neither party being in fault. It was held that the money could be recovered back, as having been paid without consideration. The principle involved in the case being considered was not discussed in that case, nor could it have been well applied, as the bank paying the money could not be presumed to have had knowledge of the fraud practiced by the holder in raising the amount of the check that had been given by its regular depositor. We find no court as rigid in adhering to the rule that a bank is bound to know the signature of its depositor on this kind of paper as the Supreme Court of the United States. In Levy v. The Bank of the United States, 1 Bin., 27, where a forged check was drawn on a bank, and accepted and carried to the credit of the holder, and the fraud was discovered in a few

hours after, it was held that the bank was the loser ;
and the Supreme Court, in the case of the Bank of the
United States v. Bank of Georgia, 10 Wheaton, 333,
when discussing the doctrine that the acceptor is pre-
sumed to know the drawer's handwriting, said : "After
some research, we have not been able to find a single
case in which the general doctrine thus asserted has
been shaken, or even doubted, and the diligence of
counsel on the present occasion has not been more
successful than our own."

In the case cited, the Bank of Georgia issued
originally the bank notes that were put in circula-
tion, and then fraudulently altered.   The Bank of the
United States, coming into possession of the notes,
presented them to the Bank of Georgia, and the
latter received them as genuine, placing the amount
to the credit of the United States Bank.   The
forgery was discovered, and the Bank of Georgia
claimed that the Bank of the United States should
lose the money.   The court held that the Georgia
Bank must lose, as it was bound to know its own
paper.   There is a manifest distinction between the
last-named case and that of Espey v. Cincinnati Bank,
reported in 18 Wallace.   In the case of Espey, if the
Cincinnati Bank had recognized the name of the drawer
as genuine, it could not well have known that the
check had been raised.   It was not the bank's own
check, but that of another ; and while, as between
parties equally innocent, it is presumed to know the
signature of its regular customer on the class of paper
in question, it is not presumed to know that the amount
is all correct, or that no fraud has been perpetrated in
that regard.   While it rests upon one signing his own

name, or that of a bank affixing its signature to notes to pass as current money, to know that the signature is genuine, it also rests on a bank, where checks are drawn upon it in the name of its customer, to know his signature, and instead of the party to whom the money is paid being required to show negligence in the bank paying the money, it devolves on the drawee to show negligence in the indorser or holder who, in good faith, has received the money, before the drawee can escape liability. Where the parties are equally innocent, the drawee is the loser.

There is no precedent in this court on the question, still we are not inclined to follow the views of text-writers, in the face of so many adjudications on the subject, and with no case presented that goes further than to modify the rule in cases where bad faith or negligence is to be attributed to the holder or indorser when taking the check. Besides, it appears from the finding of facts in this case that Burgess, the real depositor, and whose name had been forged, lived near Georgetown, in which the appellant is located, and was one of its largest depositors. These checks were continued to be paid during a period of near five months before the forgery was discovered, a fact, it seems to us, that should be decisive of this case; and while the appellant, by its officers, was acting all the while in the best of faith, believing that the signature of Burgess was genuine, the length of time these checks were being received for collection, and paid without question by the appellant, must necessarily fix the responsibility where it was placed by the court below.

The judgment denying the right of recovery by the appellant is therefore affirmed.