[No. 4390.   Decided December 20, 1902.]

CANADIAN BANK OF COMMERCE, *Appellant,* v. C. E. BING-
HAM, *Respondent.*

BANKS — PAYMENT OF FORGED CHECK — LIABILITY FOR NEGLIGENCE.

A bank which pays a forged check drawn upon it in the name
of a depositor may, if it acts within a reasonable time, recover the
amount thereof from the bank which took the check in course of
business,. and negligently paid the money upon the indorsement
of the check by the payee named, without inquiry into its genuine-
ness, or without requiring any identification of the person pre-
senting such check for payment, or any showing that he was law-
fully the holder thereof.

Appeal from Superior Court, Skagit County.—Hon.
GEORGE A. JOINER, Judge.   Reversed.

*Million & Houser,* for appellant.

*Thomas Smith,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.—The plaintiff (appellant) is a banking in-
stitution doing a general banking business in Seattle.   The
defendant is a banker doing a general banking business in
the town of Sedro-Woolley.   The Tyee Logging Company
is a logging company operating in Skagit county, and hav-
ing its principal place of business near Sedro-Woolley, the
place of business of defendant, and a patron and depositor
of plaintiff, upon whom its checks were from time to time
drawn in the course of its business.   On the 9th of Sep-
tember, 1901, some unknown person issued seven certain
checks in the name of the Tyee Logging Company, on
plaintiff, all made payable to fictitious persons, and aggre-
gating the total sum of $429.85.   The checks so issued
were forgeries written out on the regular blank checks of

the Tyee Logging Company.  Some time between the 9th
and 11th days of September, 1901, said checks were pre-
sented by someone unknown (presumably the person who
committed the forgeries) to defendant at his banking house
in Sedro-Woolley and were by him cashed after being in-
dorsed by the person presenting the same, in the name of
the fictitious payee.  Thereafter said checks were duly in-
dorsed by defendant, and presented to plaintiff at its bank-
ing house in Seattle, and were by it paid in ignorance of
the fictitious indorsements and of the same having been
forged.  On the same being presented to the Tyee Logging
Company, they were repudiated as forgeries, whereupon
demand was made by plaintiff upon defendant for the
amount so paid out on said checks, and, payment being re-
fused, this action was brought to recover the same.  To
plaintiff's complaint, defendant interposed a demurrer
challenging the sufficiency of the allegations therein con-
tained to state a cause of action, which demurrer was by
the court sustained; and, plaintiff electing to stand upon
its complaint, judgment was entered in favor of defend-
ant, dismissing plaintiff's action, from which plaintiff ap-
peals to this court.

The ground of error is the action of the court in sustain-
ing the demurrer to the complaint and in dismissing the
action.  The two essential allegations of the complaint are
as follows:

"That at the time of the payment of said check this
plaintiff was without knowledge or notice that the same
had been forged, and without knowing that the indorse-
ment thereon of the said name thereon, as the same ap-
peared upon said check, was not genuine, but believing
that said check had been regularly issued by the said Tyee
Logging Company, and believing that the same had been
properly indorsed by the owner and holder thereof, and re-

lying upon the subsequent indorsements thereon of the defendant, did pay the said check as aforesaid."

"That at the time of the cashing of said check by the defendant, he was guilty of negligence, in this: that he failed and neglected to have the holder and the person in whose possession said check was at the time of presentation for payment as aforesaid properly identified, or identified at all, and he failed in any manner to use reasonable diligence or care to ascertain whether or not said person so presenting said check was the owner thereof, or was the person named in said check as payee; or was the identical person to whom said check was issued, or to whom it purported to be issued, or that he had any lawful authority, or any authority whatever, to indorse said check, or that he was the lawful holder thereof; that, had defendant used any care or caution, he would have easily discovered that said check was a forgery."

The respondent relies upon the general doctrine that the drawee bank is bound to know the signature of its own depositor, and that, having failed to detect the forgery, and having paid the money on the check, which was presented by the paying bank, it was estopped from recovering back the money so paid. While the appellant concedes the general law to be as so stated, it insists that there is a well defined exception to the general rule, viz., that if it appears that the one to whom payment was made was not an innocent sufferer, but was guilty of negligence in not doing something which plain duty demanded, and which, if it had been done, no loss would have been entailed upon anyone, he is not entitled to retain the moneys paid through a mistake on the part of the drawee bank. We think that this exception must be sustained, and that it has a proper application to the allegations of the complaint. There are several principles of law to be considered in the discussion of this case. One is, as is contended by respondent, that

a bank is supposed to know the signatures of its depositors, and that constructive negligence is imputed to it if it pays money on checks over the forged signature of its depositor. This rule, however, must be considered in connection with a second well established rule of law, that money paid through a mistake can be recovered back, and also of a third universal rule, that the transfer of stolen property conveys no title, and that each successive purchaser has recourse upon the party from whom he purchased, because, the consideration for the transaction having failed, and nothing having been conveyed, the contract is void, and the party, having received money for nothing, has no right to retain it. Neither of these rules must be invoked to the entire exclusion of the others, but each is frequently modified by another. Thus, while it is true that constructive negligence is imputed to the bank which pays out money on a check over the forged signature of its depositor, it is also true that it received nothing of value for the money paid for the check, and that no title to the check was transferred by the paying bank. In such a case it might appropriately be said that the doctrine of comparative negligence applies, and that the constructive negligence of the drawee bank was overcome by the active negligence of the paying bank in not using the ordinary precautions which are used by banks, viz., demanding an identification of the person presenting the check, and putting forth some inquiry as to its genuineness before paying it and sending it on, dignified and accredited by its own indorsement, which would tend to lull the suspicions and abate the watchfulness of the drawee bank. In such case, it seems to us, the original and potent negligence which caused the loss to fall on one of two innocent persons should be imputed to the paying bank. Unquestionably the loss would have been its if the drawee bank had recog-

nized the forgery and refused to honor the check. Why should the mere accident, occurring afterwards, of the bank failing to detect the forgery, permit it to shift the loss, which had already been entailed on it, to another? If the delay of the drawee bank in not promptly reporting the forgery had been the means of preventing the payee bank from obtaining recourse on the forgers, and placing it in a worse position than it would have been in if payment had been refused, that would be a question worthy of consideration, but is not a question involved in this case. Certainly the governing principle upon which the respondent is entitled to retain the appellant's money, if he is so entitled, is that by the action of the appellant he has been prevented from recovering the money out of which he had been defrauded by the forger before the appellant had taken any action in the premises; or, stated affirmatively, that he has been prejudiced by the action of the appellant in paying the check instead of allowing it to go to protest. This is in harmony with the undisputed rule that a drawer or maker of a check, who is deceived by a forgery of his own signature, may recover the payment back, unless his mistake has placed an innocent holder of the paper in a worse position than he would have been in if the discovery of the forgery had been made on presentation, and with the rule that allows the maker of a note, who pays it over his own forged signature, to recover, from the person who received it, for money paid by mistake, unless his negligence has caused loss to an innocent purchaser. There are no arbitrary rules of law governing these cases, and none are contended for. There is no reason why there should be in the case at bar. It is stated in many of the authorities that there is a great conflict of authority on this question, but an investigation leads us to the conclusion that this conflict is more seeming than real; for, while the lan-

guage of several of the earlier cases gives some color to respondent's contention, and while the general rule is that a bank is responsible for a knowledge of its depositor's signature, and this is asserted in some of the cases with something of vehemence, the language of an opinion must always be construed with reference to the circumstances of the case; and, so construing the cases cited by the respondent, and all other cases which our independent investigation has been able to collate, they have, with few if any exceptions, gone beyond the establishment of the general principle above announced, without attempting to deny the exceptions contended for by appellant, and many of them openly indorse such exceptions.

The case upon which the doctrine contended for by respondent is founded, and which is universally quoted in support of such rule, is an old English case,—*Price v. Neal,* decided by Lord MANSFIELD and reported in 3 Burr. 1,354. This case seems to have attracted some attention from the fact that Lord MANSFIELD stopped the attorney who was arguing the case with the remark that the case could not be made plainer by argument. This was an action for money had and received, brought by Price against Neal. In this case two bills had been forged and paid, as in the case at bar. There is a meager statement of the case, and a still more meager argument by the court. One of the bills, it seems, had been accepted by the drawee before it had been bought by the defendant, and the court remarks:

"The plaintiff lies by, for a considerable time after he has paid these bills; and then found out 'That they were forged;' and the forger comes to be hanged. He made no objection to them, at the time of paying them. Whatever neglect there was, was on his side. The defendant had actual encouragement from the plaintiff himself for nego-

tiating the second bill, from the plaintiff's having without any scruple or hesitation paid the first; and he paid the whole value, *bona fide*. It is a misfortune which has happened without the defendant's fault or neglect. If there was no neglect in the plaintiff, yet there is no reason to throw off the loss from one innocent man upon another innocent man; but, in this case, if there was any fault or negligence in anyone, it certainly was in the plaintiff, and not in the defendant."

It will be seen that even in this case, while stating the general doctrine that it was incumbent upon the plaintiff to be satisfied that the signatures were not forgeries, it is expressly stated that there was no fault or negligence on the part of the defendant, who paid the bills. While the complaint in the case at bar alleges not only general negligence, but specific negligence, to the effect that the paying respondent failed and neglected to have the holder and the person in whose possession the check was at the time of presentation for payment properly identified, or identified at all, outside of the other allegations that, had he used any care or caution, he would have easily discovered that the check was a forgery. So that, construing this opinion in accordance with the rule above announced, viz., with reference to the circumstances of the case, it can scarcely be said to be an authority in favor of sustaining the demurrer to this complaint.

One of the cases cited by the appellant, viz., *Deposit Bank of Georgetown v. Fayette National Bank,* 90 Ky. 10 (13 S. W. 339, 7 L. R. A. 849), decided that where forged checks on a bank, purporting to be drawn in the name of one of its principal depositors, and running through a period of five months before the forgery is discovered, are accepted and paid by the drawee bank to other banks, which accept and pay them in good faith after inquiry of the drawee as to the depositor's account, the drawee bank

must stand the loss.    After quoting from Lord MANS-
FIELD's opinion, *supra,* and stating that the doctrine had
never been departed from, the court recognized the excep-
tion contended for by appellant as follows:

"Nor is it just to say that the rule adopted, requiring
the bank to know the signature of its depositor, is without
an exception; for it is undoubtedly true that the neglect
or knowledge of intervening parties who come into the
possession of the check, and receive the money on it from
the bank where it is payable, will, in some instances, be
of such a character as to enable the bank to recover back
the money."

That case was distinguished from the cases maintaining
the exception to the rule, and was decided upon the circum-
stances surrounding it, viz., that, as the court said:

"These checks were continued to be paid during a period
of nearly five months before the forgery was discovered,—
a fact, it seems to us, which should be decisive of this
case."

It is true that Edwards on Bills, Notes and Negotiable
Instruments (3d ed.), § 272, announces the rule in *Price
v. Neal, supra,* accrediting that case as the foundation of
the text, but, recognizing the distinction for which we are
contending, says, in § 276:

"It is now settled, both in England and in this country,
that money paid under a mistake of fact may be recovered,
however negligent the party paying may have been in mak-
ing the mistake, unless the payment has caused such a
change in the position of the other party that it would be
unjust to require him to refund."

It will be found that, in all cases where repayment has
been refused, it has been on the ground, either that no neg-
ligence at all by the paying party has been shown, or that
the payment by the drawee bank had placed the paying
party in a worse position than he would have been had the

payment been refused. Another case cited, *First National Bank of Marshalltown v. Marshalltown State Bank,* 107 Iowa, 327 (77 N. W. 1045, 44 L. R. A. 131), after announcing the general rule, says:

"The rule, however, has one qualification, introduced by some cases, and which we feel inclined to adopt. When the holder of the check has been negligent in not making due inquiry, if the circumstances were such as to demand an inquiry when he took the check, the drawee may recover."

It would seem that the remark of the court was pertinent to the case at bar, for certainly it is the duty and the ordinary rule of banks, when dealing with strangers, in the payments of checks presented by them, to demand at least an identification.

*Redington v. Woods,* 45 Cal. 406 (13 Am. Rep. 190), announces the rule that the drawee of a check is bound, at his peril, to know the handwriting of the drawer, and that, if he pay a check in which the signature of the drawer had been forged, he must suffer the loss as between himself and the drawer or an innocent holder to whom he has made payment. That was the case of a raised check, and is not pertinent to the discussion of the case at bar. *Levy v. Bank of the United States,* 4 Dall. 234, does not seem to us to be in point. *National Park Bank v. Ninth National Bank,* 46 N. Y. 77, is simply an announcement of the general rule, relying upon the case of *Price v. Neal, supra.* *Germania Bank v. Boutell,* 60 Minn. 189 (62 N. W. 327, 27 L. R. A. 635, 51 Am. St. Rep. 519), which is asserted by the respondent to be a case in point, it seems to us is not in point, so far as the circumstances of the two cases are concerned, for there the paying bank took the precaution, which the court says any prudent bank would take, to have the payee identified and the check indorsed by a

responsible person. It is the allegation of the complaint in this case that the failure of the respondent to have the payee identified was an act of imprudence and negligence, and the case cited sustains this contention, in asserting that any prudent bank would have taken that precaution. So, with all the cases we have been able to find, there are none that have gone so far as to hold that, where the paying bank had been guilty of such negligence as failing to have the payee identified, or failing to make any inquiries in regard to the genuineness of the check, when presented by an absolute stranger, it could retain moneys which had been paid by the drawee bank through an inadvertence or mistake in failing to detect the forgery of the depositor's signature.

But the authorities affirmatively sustaining the exception to the general rule speak with no uncertain sound. In *Ellis v. Ohio Life Ins. & Trust Co.*, 4 Ohio St. 628 (64 Am. Dec. 610), the court, after mentioning the general rule, holds:

"But this exception does not apply when, either by express agreement or a settled course of business between the parties, or by a general custom in the place and applicable to the business in which both parties are engaged, the holder takes upon himself the duty of exercising some material precaution to prevent the fraud, and, by his negligent failure to perform it, has contributed to induce the payee to act upon the paper as genuine, and to advance the money upon it."

The exception spoken of by the court there was the exception to the rule that money paid under a mistake of facts and without consideration may, as a general rule, be recovered back. In this case the respondent did not exercise the material precaution to prevent the fraud which the court, in *Germania Bank v. Boutell, supra*, said that any prudent bank would exercise. "Nor," said the court in

*Ellis v. Ohio Life Ins. & Trust Co.,* "does it apply in
any case where the parties are in a mutual fault, or where
the money is paid upon a mistake of facts, in respect to
which both were bound to inquire."

In *National Bank of North America v. Bangs,* 106
Mass. 441 (8 Am. Rep. 349), it was held that the respon-
sibility of a drawee, who pays a forged check, for the gen-
uineness of the forged signature, is absolute only in favor
of one who has not by his own fault or negligence contrib-
uted to the success of the fraud or to mislead the drawee;
and if the payee took the check, drawn payable to his or-
der, from a stranger or other third person, without in-
quiry, although in good faith and for value, and gave it
currency and credit by indorsing it before receiving pay-
ment of it, the drawee may recover back the money paid.
The court cited *Price v. Neal, supra,* in support of the gen-
eral doctrine therein declared, but stated:

"But this responsibility, based upon presumption alone,
is decisive only when the party receiving the money has in
no way contributed to the success of the fraud, or to the
mistake of fact under which the payment was made;"

citing *Gloucester Bank v. Salem Bank,* 17 Mass. 33, to the
effect that, if the loss can be traced to the fault or negli-
gence of either party, it shall be fixed upon him.

The confusion which has crept into the decisions of the
courts is based upon the fact that the responsibility is an
absolute responsibility, instead of a presumption of negli-
gence which may be overcome. If this doctrine is carried
to its legitimate conclusion, a case might arise where the
forger was so skillful that no expert would be able to de-
tect it, and yet the paying bank might, under circum-
stances showing indisputable negligence and carelessness
in the purchasing of such check, shift the loss which its
negligence brought upon it onto an innocent party, upon

the theory that the rule was iron-clad and absolute, instead of being a presumption alone. In *Third National Bank v. Allen,* 59 Mo. 312, a bank, having paid to a stranger a check drawn upon a sister bank, collected from the latter the amount of the check. The paper turned out to have been forged, and, at the time of the payment, neither bank was aware of, or had reason to suspect, the fact. Next day the paying bank ascertained the forgery, and on that day or the succeeding day notified the other bank of the fact. It was held that the notification was given in reasonable time, and that the money could be recovered back. In *People's Bank v. Franklin Bank,* 88 Tenn. 299 (12 S. W. 716, 6 L. R. A. 724, 17 Am. St. Rep. 884), it was held that where a bank had negligently cashed a forged check purporting to be drawn upon another bank, and had, upon its indorsement of that check, received payment of the drawee bank, it was liable to the latter bank for the amount received, upon subsequent discovery that the check was forged. In that case the defendant answered, admitting that it received and cashed the check, and stating that it was unable to furnish the name of the party or parties by whom the check had been presented and to whom it had been paid; presumed that it required identification, but of this it was not certain. In the discussion of the case it was said:

"Notwithstanding some conflict of authority upon the subject, a careful investigation of the adjudged cases and of the text books leads us to the conclusion that the bank can recover of a party to whom payment is made on a forged check indorsed by the party to whom paid, where the party to whom paid has been guilty of negligence in receiving and indorsing the check."

*First National Bank of Danvers v. First National Bank of Salem,* 151 Mass. 280 (24 N. E. 44, 21 Am. St. Rep.

450), seems to be a case directly in point. There a forged check, purporting to be drawn upon a bank by a firm which was one of its customers, was made payable to a payee named, or bearer. Another bank, of which the firm was not a customer, when the check was presented to it by an unknown person, without attempting to identify him, and upon his indorsing it in the payee's name, cashed it, and was credited with the amount as money by the drawee. The drawee negligently failed to discover the forgery for a month or two, but then immediately notified the bank cashing the check, which was not prejudiced by the delay. *Held*, that the bank cashing the check must bear the loss. The opinion in this case is written by Devens, Judge, who, after noticing the general rule which we have discussed, said:

"This presumption is conclusive only when the party receiving the money has in no way contributed to the success of the fraud, or the mistake of fact under which the payment has been made. In the absence of actual fault on the part of the drawee, his constructive fault in not knowing the signature of the drawer and detecting the forgery will not preclude his recovery from one who took the check under circumstances of suspicion without proper precaution, or whose conduct has been such as to mislead the drawee or induce him to pay the check without the usual security against fraud."

"The bank is bound to know the signature of its depositor, and if it pays out money on a forged check it cannot charge the depositor with the amount, but as against him must bear the loss itself. Where, however, the loss can be traced to the fault or negligence of the drawer (or holder) it will be fixed upon him." 3 Am. & Eng. Enc. Law, 222, 223.

"But, on the other hand, it may be observed, that the holder who obtained payment cannot be considered as having altogether shown sufficient circumspection; he might,

before he discounted or received the instrument in payment, have made more inquiries as to the signatures and genuineness of the instrument, even of the drawer or indorsers themselves; and if he thought fit to rely on the bare representation of the party from whom he took it, there is no reason that he should profit by the accidental payment, when the loss had already attached upon himself, and why he should be allowed to retain the money, when by an *immediate* notice of the forgery he is enabled to proceed against all other parties precisely the same as if the payment had not been made, and, consequently, the payment to him has not in the least altered his situation, or occasioned any delay or prejudice. It seems that of late, upon questions of this nature, these latter considerations have influenced the court in determining whether or not the money shall be recoverable back; and it will be found, on examining the older cases, that there were facts affording a distinction, and that upon attempting to reconcile they are not so contradictory as might, on first view, have been supposed." Chitty, Bills, p. 431.

2 Daniel on Negotiable Instruments, § 1657, p. 686, under the title, "Exceptions to the Rule Holding Bank Responsible When It Pays Forged Checks," says:

"Even where the general doctrine, that the bank has no remedy where it has certified or paid a forged check against the holder, is recognized as a fixed principle of law, there are some exceptions which are insisted upon as reasonable and just. As the responsibility of the bank is based upon the presumption that it has greater means and better opportunities to become familiar with the handwriting of depositors than are afforded the holder, it is declared to be decisive alone when the party holding the check has in no way contributed to the success of the fraud. And if the loss can be traced to the fault or negligence of any party it will be fixed upon him. In the absence of actual fault or negligence on the part of the drawee bank, its constructive fault in not knowing the signature of the drawer, and detecting the forgery, will not preclude its recovering back

32-30 WASH.

the amount, or recalling its certificate, as against one who has received the money, or taken the check with knowledge of the forgery; or who took the check under circumstances of suspicion without proper precaution, or whose conduct has been such as to mislead the bank, or to induce payment or certification of the check, without the usual scrutiny or precautions against mistake or fraud."

Mr. Morse, in his work on Banks and Banking (3d ed.), § 464, under the title, "The Old Rule Unreasonable," says:

"The old doctrine was that a bank was bound to know its correspondent's signature. A drawee could not recover money paid upon a forgery of the drawer's name, because, it was said, the drawee was negligent not to know the forgery, and it must bear the consequences of its negligence. This doctrine is fast fading into the misty past, where it belongs. . . . for it was founded in misconception of the fundamental principles of law and common sense."

In § 466 the same author says:

"But it follows obviously that if the payee, holder or presenter of the forged paper has himself been in default, if he has himself been guilty of negligence *prior* to that of the banker, or if by any act of his own he has at all *contributed* to induce the banker's negligence, then he may lose his right to cast the loss upon the banker."

Many of the cases go so far as to hold that the indorsement of a check by a purchasing bank is a warranty of the genuineness of the check, and that the drawee bank can recover back the money paid on such check. We are not able, however, to say that such is the weight of authority; but the overwhelming weight of, if not universal, authority undoubtedly sustains the right of the drawee bank to recover back money paid upon a forged check under the circumstances shown by the allegations of the complaint in this case.

The judgment will be reversed, with instructions to overrule the demurrer to the complaint.

REAVIS, C. J., and ANDERS and MOUNT, JJ., concur.