(107 N. W. 197.)

---

THE FIRST NATIONAL BANK OF LISBON v. BANK OF WYNDMERE.

Opinion filed June 28, 1906.

**Bills and Notes — Payment of Forged Check — Recovery Back.**

1. The drawee of a forged check who has paid the same without detecting the forgery, may upon discovery of the forgery, recover the money paid from the party who received the money, even though the latter was a good faith holder, provided the latter has not been misled or prejudiced by the drawee's failure to detect the forgery.

**Same — Burden of Proof.**

> 2. The burden of showing that he has been misled or prejudiced by the drawee's mistake in such a case rests upon him who claims the right to retain the money for that reason.

Appeal from District Court, Richland county; *Allen,* J.

Action by the First National Bank of Lisbon against the Bank of Wyndmere. Judgment for defendant, and plaintiff appeals.

Reversed.

*Rourke, Kvello & Adams,* for appellant.

A party who pays a forged check does so at his peril; and, if by means of his indorsement and use of the same he thereby obtains money from another he is liable for the money so received. First National Bank of Crawfordsville v. Indiana National Bank of La Fayette, 30 N. E. 7, 808, 51 A. S. R. 221; Ellis v. Ins. Co., 4 Ohio. St. 682, 64 Am. Dec. 610; Bank v. Franklin, 17 A. S. R. 884; Germania Bank v. Boutell, 62 N. W. 327, 57 Am. St. Rep. 519; First National Bank of Orleans v. State Bank of Alma, 36 N. W. 289; McKelroy v. Sou. Bank of Ken., 14 La. Ann. 458, 74 A. D. 438; Nat. Bank of North America v. Bangs, 106 Mass. 441, 8 A. R. 349; Souvant v. San Antonio National Bank, 63 Tex. 610; First National Bank v. Ricker, 71 Ill. 439; 22 A. R. 104; Bowles on Banks and Depositors, section 189; 2 Parsons, Notes and Bills, 80; note 17, A. S. R. 890.

The party seeking recovery need give only reasonable notice after he discovers the forgery. 2 Daniel, Neg. Inst., section 1372; 2 Morse, Banks and Banking, section 487; Ellis v. Insurance Co., supra; cases cited in note, 17 A. S. R. 899.

*Purcell & Divet,* for respondent.

A payee bank cannot recover of a good faith holder. First Nat'l Bank of Marshalltown v. Marshalltown State Bank, 77 N. W. 1045; Neal v. Coburn, 92 Me. 139, 69 Am. St. Rep. 495; Chiam v. Bank, 36 S. W. 387; Moody v. Bank, 46 S. W. 660; Bank v. Perton, 39 S. W. 223; Woods v. Bank, 40 S. E. 720; Price v. Neal, 3 Burrows, 1355; Redington v. Woods, 45 Cal. 406; Bank v. Parker, 71 Ill. 430; Bank v. Bank, 13 S. W. 339; Bank v. Bank, 38 N. E. 739; Ins. Co. v. Bank, 60 N. H. 442; Bank v. Bank, 10 Vt. 141; Nat'l Park Bank v. Ninth Nat'l Bank, 46 N. Y. 77; Germania Bank v. Boutell, 62 N. W. 327; 5 Am. & Eng. Enc. Law (2d Ed.)

1071; Bank of the U. S. v. Bank of the State of Georgia, 10 Wheat. 333, 8 L. Ed. 334; Bank v. Bank, 17 Mass. 41.

ENGERUD, J. This is an appeal from an order sustaining a demurrer to the complaint on the ground that it does not state a cause of action. The complaint states the following facts: The plaintiff and defendant are banking corporations, located, respectively, at Lisbon and Wyndmere, in this state. On July 1, 1905, the defendant caused to be presented to plaintiff for payment a forged check purporting to have been drawn by Bixby & Marsh upon the plaintiff bank in favor of Theodore Larson for $60.25, dated June 27, 1905, and indorsed in blank by the payee. It also bore the indorsement of the defendant, and each of the several banks through whose hands it had passed in the usual course of transmission from defendant to plaintiff. Each indorsing bank had expressly guaranteed the genuineness of previous indorsements. Bixby & Marsh were depositors in plaintiff bank, and had to the credit subject to check a sufficient amount to pay the check in question. The plaintiff bank, believing the check genuine, paid it and charged it to the account of Bixby & Marsh. The name of this firm had been forged, but this fact was not discovered until July 20th. when Bixby & Marsh, who were ranchmen living more than 20 miles from Lisbon, called at the bank and examined the canceled vouchers. Bixby and Marsh declined to allow credit to plaintiff for the spurious voucher. Immediately on that day, the plaintiff notified the defendant bank of the forgery, and demanded repayment; at the same time returning the forged check to defendant. The defendant refused to refund. Judgment is demanded for the amount of the check and interest.

The question presented by this case is one that has never heretofore come before this court. It will be noticed that the complaint does not charge the defendant with any bad faith or neglect of duty in indorsing and putting in circulation the forged check, and we must therefore assume that the defendant indorsed, and caused the check to be presented for payment in good faith in the mistaken belief that it was genuine. The plaintiff upon whom the check was drawn, accepted and paid the check under the same mistaken belief that the drawer's signature was genuine. If we had not read the numerous cases which have been cited dealing with this question, we would have thought the proposition was a very plain one, readily solved by the application of fundamental principles

of law and common sense. ' The plaintiff *deft ?* had received from the de-*pltff* fendant ʃ without consideration a sum of money which it was not rightfully entitled to, and the sole moving cause which induced the exchange of money for the spurious check was the mutual mistake of the parties to the transaction with respect to the genuineness of the writing. In the absence of any showing that the defendant had been misled or prejudiced by the plaintiff's mistake so as to render it inequitable to compel repayment, the defendant ought to refund the money had and received. Unfortunately, however, this just and simple solution of what seems to us a plain proposition, has not generally prevailed. A number of courts have laid down the unqualified rule that where the drawee of a check to which the name of the drawer has been forged, pays it to a bona fide holder, he is bound by the act, and cannot recover the payment. National Park Bank v. Ninth National Bank, 46 N. Y. 77, 7 Am. Rep. 310. The reason generally assigned to justify the adoption of this rule is stated in Germania Bank v. Boutell, 69 Minn. 189, 62 N. W. 327, 27 L. R. A. 635, 51 Am. St. Rep. 519, as follows: "The money of the commercial world is no longer coin. The exchanges of commerce are now made almost entirely by means of drafts and checks. It was largely in deference to this fact that the recovery of money paid on paper of this kind to which the drawer's signature was forged, was made an exception to the general rule as to the recovery of money paid under a mistake of fact. In view of the use of this class of paper as money, it was considered that public policy required that as between the drawee and good-faith holders, the drawee bank should be deemed the place of final settlement, where all prior mistakes and forgeries should be corrected and settled once for all, and if not then corrected, payment should be treated as final; that there must be a fixed and definite time and place to adjust and end these things as to innocent holders; and that time and place should be the paying bank and the date of payment and that if not done then, the failure to do so must be deemed the constructive fault of the payee bank, which must take the consequences." According to this line of cases the whole duty and risk of determining the genuineness of a draft or check rests upon the drawee, and 'as Lord Mansfield is reported to have said in Price v. Neal, 3 Burr. 1354, the holder "need not inquire into it," provided he acquired the paper for value in good faith. Bank of St. Albans v. Farmers' & Me-

chanics' Bank, 10 Vt. 141, 33 Am. Dec. 188; Neal v. Coburn, 92 Me. 139, 42 Atl. 348, 69 Am. St. Rep. 495; Deposit Bank v. Fayette National Bank, 90 Ky. 10, 13 S. W. 339, 7 L. R. A. 849; Bernheimer v. Marshall, 2 Minn. 78 (Gil. 61), 72 Am. Dec. 89. Of this extreme view it is well said in 2 Morse on Banking (4th Ed.) section 464: "This doctrine is fast fading into the misty past, where it belongs. It is almost dead, the funeral notices are ready, and no tears will be shed, for it is founded in misconception of the fundamental principles of law and common sense."

Most of the courts now agree that one who purchases a check or draft is bound to satisfy himself that the paper is genuine; and that by indorsing it or presenting it for payment or putting it into circulation before presentation he impliedly asserts that he has performed this duty. Consequently it is held that if it appears that he has neglected this duty, the drawee, who has, without actual negligence on his part, paid the forged demand, may recover the money paid from such negligent purchaser. The recovery is permitted in such cases, because, although the drawee was constructively negligent in failing to detect the forgery, yet if the purchaser had performed his duty, the forgery would, in all probability, have been detected and the fraud defeated. Gloucester Bank v. Salem Bank, 17 Mass. 33; Bank of U. S. v. Bank of Georgia, 10 Wheat. 333, 6 L. Ed. 334; National Bank of America v. Bangs, 106 Mass. 441, 8 Am. Rep. 349; First National Bank of Danvers v. First National Bank of Salem, 151 Mass. 280, 24 N. E. 44, 21 Am. St. Rep. 450; First National Bank v. Ricker, 71 Ill. 439, 22 Am. Rep. 104; Rouvant v. Bank, 63 Tex. 610; Bank v. Bank, 30 Md. 11, 96 Am. Dec. 554; People's Bank v. Franklyn Bank, 88 Tenn. 299, 12 S. W. 716, 6 L. R. A. 724, 17 Am. St. Rep. 884; Ellis & Morton v. Trust Co., 4 Ohio St. 628, 64 Am. Dec. 610; Bank v. Bank, 58 Ohio St. 207, 50 N. E. 723; Bank v. Bank. 22 Neb. 769, 36 N. W. 289, 3 Am. St. Rep. 294; Canadian Bank v. Bingham, 30 Wash. 484, 71 Pac. 43, 60 L. R. A. 955. While all these authorities agree that negligence on the part of the purchaser in taking a forged check subjects him to liability for the loss, they are not in accord as to what constitutes such negligence. These authorities, it seems to us, have had the effect of substituting uncertainty and confusion for a rule which, although manifestly arbitrary and unjust, had at least the merit of simplicity and clearness. It must be conceded that the majority of the

courts that have passed on the question are committed to the doctrine that the drawee who has paid a spurious check can recover the payment from a good-faith holder only when the latter had been negligent. If the law of this state is to be determined by the mere weight of authority alone, as evidence by the decisions in other states, then we should be constrained to hold that this complaint shows no liability on defendant's part, because it does not show that the defendant has been in any degree negligent.

However valuable the decisions of courts in other jurisdictions may be as guides to aid us in coming to a correct decision, it cannot be admitted that such decisions, however numerous and uniform, conclusively establish the law in this jurisdiction. They are, after all, only arguments in support of the views entertained by the judges who uttered them. Unless the doctrines advocated by them have become part of the law of this state by the adoption of them by positive law or general usage and opinion, they must be received and considered by us merely as arguments to be weighed, and adopted or rejected according as we deem them sound or unsound. If, in our opinion, a doctrine advocated by the courts of other states is an unwarranted departure from the fundamental principles of law, it is our duty to reject it, unless the rule so advocated, even though fundamentally erroneous, has become part of our common law by general usage and custom; or has been expressly or impliedly made part of our law by statute. There has been no statutory adoption of such a rule, and we have no hesitation in saying that there is no general usage or custom prevailing in this state that the checks and drafts of individuals shall circulate, and be treated and dealt with as bank or government currency. Yet, as indicated by the language quoted from the Minnesota decision (Germania Bank v. Boutell, supra), the rule that the drawee must save in exceptional cases, bear the consequences of his mistake in honoring a spurious check, was adopted in deference to such a supposed usage. The fact that the cases advocating this doctrine all cite as authority Bank of U. S. v. Bank of Georgia, 10 Wheat. 333, 6 L. Ed. 334, and Gloucester Bank v. Salem Bank, 17 Mass. 33, which involve forged bank notes, shows that the rule rests on the assumption that the checks and drafts of individuals are to be placed in the same class with bank bills which are issued and intended to circulate as money. There is no statute or business usage in this state to warrant that assumption. The decisions which ad-

vocate the rule that a drawee may recover in case of negligence on the part of the holder who presents and receives payment of a spurious check, all recognize the fallacy of those decisions which apply the same rule to checks and drafts as is applicable to bank notes which circulate as money. Yet, strange to say, nearly all of them expressly or impliedly accept as true the proposition that a drawee of a check or draft should be excepted from the operation of that fundamental rule which permits one who parts with money by mistake to recover it from one who in equity and good conscience ought not to retain it. They simply hold that this exception should not apply in cases where the purchaser or indorsee was negligent in not taking proper precautions to guard against forgery. It is evident at a glance that this proposition, which these cases thus accept as proper, has no other foundation than the same premise which they very properly hold to be fallacious—namely, that checks and drafts on banks or individuals should be governed by the same rules as apply to bank notes which circulate as money. If it is conducive to the best interests of the business world to put checks and drafts on the same footing as bank currency, and if it would tend to make checks and drafts a more safe and convenient circulating medium of exchange, to shift the whole risk of loss by forgery upon the drawee instead of letting it rest upon those who are credulous enough to assume the risk of parting with value for such paper, the legislative branch of the government can be trusted to establish that rule, if such a radical departure from fundamental principles of law is deemed wise. The court has no power to do so.

Being convinced, as we are, that this doctrine advocated by the great majority of the cases which have come to our attention, to the effect that a drawee of a check should be excepted from the ordinary rules relating to the right to recover money paid by mistake, is unsound and has never been adopted in this state by usage or statute, it would be nothing less than usurpation of legislative power by this court to declare that rule to be the law of this state because courts in other states have so held. That the rule in question is unsound in principle and unjust, is almost universally admitted, and the courts are showing an increasing tendency to discard it. We think, therefore, that we are showing no disrespect to precedent in taking the stand towards which the modern decisions are unmistakably tending, and from which it is generally

conceded there should have never been any departure. We, therefore, reject as unsound the doctrine that a drawee of a check should be excepted from the general rule in relation to the recovery of money paid by mistake. The drawee is presumed to know the signature of the drawer of the check or draft; and the holder of such check or draft who has acquired it in good faith has the right to act in reliance on that presumption, provided he himself has omitted no duty, the performance of which would have prevented the success of the fraud. Consequently, if the drawee pronounces the check genuine by paying it or otherwise honoring it, the holder who has acted in good faith and without negligence, may safely rely upon the judgment of the drawee, and act accordingly. The drawee cannot, under such circumstances, recall his acceptance or payment to the detriment of the party who has rightfully relied upon his decision. In such a case the party who received the money has the superior equity, and he may justly retain the money, although he was not originally entitled to receive it.

But, as is usually the case, when the party who has collected the check had previously cashed it or taken it in exchange for commodities, there is no reason why he should not refund. Every one with even the least experience in business knows that no business man would accept a check in exchange for money or goods unless he is satisfied that the check is genuine. He accepts it only because he has proof that it is genuine, or because he has sufficient confidence in the honesty and financial responsibility of the person who vouches for it. If he is deceived he has suffered a loss of his cash or goods through his own mistake. His own credulity or recklessness, or misplaced confidence was the sole cause of the loss. Why should he be permitted to shift the loss due to his own fault in assuming the risk, upon the drawee, simply because of the accidental circumstance that the drawee afterwards failed to detect the forgery when the check was presented? Our views find much support in many of the cases which still cling more or less tenaciously to the negligence rule, notably the following: Bank v. Bank, 151 Mass. 280, 24 N. E. 44, 21 Am. St. Rep. 450; Ellis & Morton v. Trust Co., 4 Ohio St. 628, 64 Am. Dec. 610; Bank v. Bank, 88 Tenn. 299, 12 S. W. 716, 6 L. R. A. 724, 17 Am. St. Rep. 884; Bank v. Bingham, 30 Wash. 484. 71 Pac. 43, 60 L. R. A. 955; Bank v. Bank, 22 Neb. 769, 36 N. W. 289, 3 Am. St. Rep. 294; Bank v. Bank (Ind. App.) 30 N. E. 808, 51 Am. St. Rep. 221; The case of

McKleroy & Bradford v. Southern Bank, 14 La. Ann. 458, 74 Am. Dec. 438, directly supports our views, and we are gratified to note that our views are in accord with those generally advocated by the text-writers. We, therefore, hold that drawees of checks and drafts are not to be excepted from the general rule which permits the recovery of money paid by mistake. We hold that a drawee who has by mistake paid a spurious check or draft may recover the money paid unless the party receiving the money has been misled to his prejudice by the drawee's mistake. If any such facts exist, they are best known to the defendant, and it is his duty to prove them. The complaint discloses prima facie cause of action by alleging the payment by mistake.

The order appealed from must be reversed, and the demurrer overruled. All concur.