# Farmers National Bank of Augusta v. Farmers & Traders Bank of Maysville

(Decided May 22, 1914.)

## Appeal from Mason Circuit Court.

1. **Banks—Payment of Forged Check.**—Although money paid by mistake can generally be recovered, the payment of a forged check by a bank upon which it is drawn is an exception to the general rule.

2. **Banks—Payment of Forged Check—Exceptional Rule—Must Know Signature of Depositor—Estoppel.**—The exceptional rule is that a bank is bound to know the signature of its depositors; and if it pay the check of a depositor it thereby admits the genuineness of his signature, and is estopped to afterwards deny it to the detriment of an innocent third party.

3. **Banks—Payment of Forged Check—Burden Upon Holder to Know Previous Endorsements.**—The exceptional rule does not, however, require the drawee bank to know the signature of an endorser; that burden is upon the holder, who is bound to know that the previous endorsements, including that of the payee, are in the handwriting of the parties whose names appear upon the check, or were duly authorized by them.

4. **Banks—Payment of Forged Check—When Drawee Bank Entitled To Recover from First Bank Which Took Check.**—Where a bank cashed a check drawn upon another bank without requiring an identification of the holder who endorsed the check and the check was forwarded to the drawee bank and paid by it, and it subsequently was learned that the names of the drawer and endorser were both forged, the drawee bank was entitled to recover the amount of the check from the first bank which took the check under the forged endorsement.

WORTHINGTON, COCHRAN & BROWNING and M. HARGETT for appellant.

A. D. COLE for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

The appellant does a banking business at Augusta, Kentucky; the appellee does a like business at Maysville, Kentucky. For brevity, they will be called the Augusta Bank and the Maysville Bank, respectively.

On February 5, 1913, an unknown man, representing himself to be Fred. Schatzman, presented to the Maysville Bank, at its place of business in Maysville, a check drawn on the Augusta Bank, bearing the signature of "James Ware," as drawer, and payable to the order of

Fred Schatzman, for $375.00. Without inquiry or question, and without any identification of the holder, the Maysville Bank paid the check and forwarded it to its collecting bank, the Fifth-Third National Bank, of Cincinnati, Ohio, which, in turn, forwarded it to the Augusta Bank, where it was received and paid on February 10th.

James Ware was a regular customer and depositor of the Augusta Bank, his account being kept in the name, however, of "James Ware, Agent." And, when the check was presented to the Augusta Bank on February 10th, an officer of that bank added the word "Agt." to Ware's name on the check, and then paid it and charged it to the account of "James Ware, Agent."

On March 14th, when Ware went over his checks he at once discovered the check was a forgery; and it afterwards appeared that the indorsement of Fred. Schatzman was likewise a forgery, and that the man who received the money was not Fred Schatzman. These facts are alleged in the petition and are conceded to be true.

The Maysville Bank having refused to repay to the Augusta Bank the money thus obtained upon the forged check, the Augusta Bank brought this action on August 21, 1913, to recover the money so paid; and the circuit court having sustained a demurrer to the petition setting up the facts as above stated, the Augusta Bank appeals.

When the Maysville Bank indorsed the check to the Cincinnati Bank for collection, it in terms "guaranteed all prior indorsements."

It is a well settled rule that a bank is bound to know the signature of its depositor; and if it pays the check of a depositor it thereby admits the genuineness of his signature, and is estopped to afterwards deny it to the detriment of an innocent third party. The reason for the rule is that the paying bank has in its records the genuine signature of its customer, or knows it, while the collecting bank is a stranger to the signature of the drawer.

Appellant insists, however, that while the general rule is as above stated, it does not apply to the acts of indorsers; and, furthermore, that the holder is bound to know that all previous indorsements, including that of the payee, are the genuine handwriting of the parties whose names appear upon the check.

The rule that money paid under a mistake of fact may be recovered, is too well established to need any

discussion. And, the exception to the rule, that money paid by the drawee of a forged check cannot be recovered, is equally well settled.

In 5 Cyc., 546, it is said:

"Although money paid by mistake can generally be recovered the payment of forged paper is an exception. When payment is made to the holder of the paper who has come into possession of it without any fault on his part, and his situation would be rendered worse if compelled to refund than it was before receiving payment, the money cannot be recovered from him. If, however, he has been negligent in any regard, he cannot retain the money. To justify him in doing so the bank alone must have been negligent. If neither party has been negligent, or both have been, then the bank can recover the money."

But the right of the drawee against a holder under a forged indorsement is different, and is thus stated in 2 Daniel on Negotiable Instruments, section 1663:

"A bank is not bound to know the signature of an indorser. And besides, the holder of the check, whether he indorses it or not, warrants the genuineness of all prior indorsements. Therefore, if the bank pay a check upon which the name of a prior indorser is forged, it may recover back the amount from the party to whom it was paid, or from any party who indorsed it subsequent to the forgery."

The rule and the exception are well stated by Chief Justice Taney, in Hortsman v. Henshaw, 11 How., 182, as follows:

"The general rule undoubtedly is that the drawee, by accepting the bill, admits the handwriting of the drawer; *but not of the indorsers.* And the holder is bound to know that the previous indorsements, including that of the *payee,* are in the handwriting of the parties whose names appear upon the bill, or were duly authorized by them. And if it should appear that one of them is forged, he cannot recover against the acceptor, although the forged name was on the bill at the time of the acceptance. And if he has received the money from the acceptor, and the forgery is afterward discovered, he will be compelled to repay it. The reason of the rule is obvious. A forged indorsement cannot transfer any interest in the bill, and the holder therefore has no right to demand the money."

As the drawee is chargeable with notice of the drawer's signature, appellee contends appellant cannot recover; while appellant contends it should recover because the appellee, as holder, was charged with knowing the genuineness of the indorsement.

The exceptional rule which does not permit the drawee to recover money which it has paid upon the forged check of its customer was applied by this court in Deposit Bank of Georgetown v. Fayette National Bank, 90 Ky., 10; 7 L. R. A., 849.

In that case Wolf forged the name of Burgess, a depositor of the Georgetown Bank, to sixteen checks which Wolf collected from the Fayette National Bank, which in turn, presented the checks to the Georgetown Bank and they were there paid and charged to the account of Burgess. These transactions extended from early in December, 1883, to April, 1884; the forgery was discovered on May 7th. Wolfe was identified when he collected the checks from the Fayette National Bank, and there was no reason on the part of that bank to suspect the good faith of the transaction. Neither was there any absence of good faith upon the part of the Georgetown Bank, since it believed that Burgess was, in fact, the drawer of the checks. The opinion at least twice lays stress upon the fact that Wolf was identified when he collected the checks from the Fayette National Bank. These facts, therefore, bring the case within the exceptional rule which does not permit money paid under a mistake to be recovered by the drawee who has paid the forged check of its customer. The decision goes no further, however, and does not apply to the class of cases represented by the case before us, where the indorsement was likewise forged, and the check was paid on the forged indorsement before it was finally paid by the drawee.

The exceptional rule was first announced by Lord Mansfield in 1762, in Price v. Neal, 3 Burr., 1357, where it is said:

"It was incumbent upon the plaintiff, to be satisfied, 'that the bill drawn upon him was the drawer's hand,' before he accepted or paid it; but it was not incumbent upon the defendant, to inquire into it."

In the opinion in the Deposit Bank of Georgetown v. Fayette National Bank, *supra*, this court, speaking through Judge Pryor, recognized the fact that while the

decided weight of authority is with Lord Mansfield, it nevertheless criticised the rule laid down by him in Price v. Neal, as being possibly too sweeping in its character, and that it could not be said that the rule which required a bank to know the signature of its depositor was without an exception, since it is undoubtedly true that the neglect or knowledge of intervening parties, who come into the possession of the check and receive the money on it from the bank where it is payable, would, in some instances, be of such a character as to enable the bank to recover back the money.

In support of that qualification of the rule, Judge Pryor quotes from Daniel on Negotiable Instruments, Vol. 2, page 669, where it is said, "that when one knows that it is a forgery, or takes it under circumstances of suspicion, without proper precaution, or whose conduct has been such as to mislead the bank," the money may be recovered back.

The opinion further cites the case of the National Bank of North America v. Bangs, 106 Mass., 441, where a stranger giving his name as Riskford, drew his check, payable to the order of Bangs, on the National Bank of North America. Bangs indorsed the check, and the bank paid the money; and upon discovering the forgery, the bank notified Bangs, the payee and indorser, and subsequently sued him to recover the money back. The bank recovered a judgment, and this court approving the ruling of the Massachusetts court, said:

"This, we think, was proper, as it would be an exceedingly harsh rule to permit one who negotiates with a forger, and obtains his check payable to the use of the party advancing the money, who then indorses it to a bank, to hold on to the money when the payee has himself contracted with the forger, and given credit to the paper by his indorsement that led the bank to believe the paper was genuine." 90 Ky., 17.

The opinion of Judge Barbour, of the Superior Court, in the Georgetown Bank case, *supra,* is reported in 10 Ky. L. R., 351, and is instructive as giving the reason for applying the exceptional rule in that case.

Judge Barbour said:

"The rule as stated is sustained by Price v. Neal, 3 Burrows, 1534; Levy v. Bank of U. S., 4 Dall., 234; Bank of U. S. v. Bank of Ga., 10 Wheat., 333; First Nat. Bank v. Richie, 71 Ill., 439. Notwithstanding these high au-

thorities and numerous other cases to the same point, Mr. Daniel, in his work on Negotiable Instruments (Sec. 1655a), questions the correctness of the rule and says: 'Where the bank discovers the forgery immediately and demands restitution, offering to return the check before the holder has lost anything, by regarding the matter as all right, we cannot help thinking that it should be entitled to recover back the amount.' In support of Mr. Daniel's opinion it is argued that though a bank is to be taken as knowing the signature of its customers and depositors, yet if it fails in such knowledge and innocently pays a forged check it does not necessarily follow that he who received the money shall keep it; that the rule is one of mercantile policy whereby the courts imply knowledge when the implication is necessary for the protection of the rights of the innocent person. To this much of the argument, which is but a statement of the reason of the rule, we see no objection. But it is further, and we think inconsistently, argued that where the bank and the party to whom the check is paid are both deceived without actual fault upon the part of either, there being no collateral hardship on either side, that the bank having paid the money under a clear mistake of fact should be allowed to demand its return. The adoption of the latter part of this proposition would effectively destroy the rule. As between the bank and the party to whom it has paid its depositor's check, there is no necessity or occasion for the application of the rule that the bank must know its depositor's signature except where both the bank and the party to whom the money is paid are equally innocent of any wrong. If the fault is with either, the loss is upon him in fault. If the party collecting the check is guilty of negligence, if he did not receive it in the usual course of business, or if he received it under circumstances which should have excited his suspicion, another principle is interposed to prevent him from holding the money he has received. While on the other hand, if the bank pays the check when it could, by the exercise of proper care, have discovered that it was a forgery, there would be no occasion for the interposition of the rule. It cannot be said that the bank, unless it has been misled by his conduct, paid the check upon its faith in the party who presented it. It paid as the law presumes upon the faith of its knowledge of the drawer's signature. With the single exception of the

case of McKleroy v. Southern Bank of Ky., 14 La. Ann., 458, all the cases cited by Daniel as supporting his view, so far as we have been able to examine, are where the party took the paper under circumstances which should have excited his suspicions, or cases where the forgery was not that of the drawer but of an indorser—very different cases. The drawer has no better means of knowing the signature of the indorser than the holder of the paper has. In such a case it is not incumbent upon the drawer to know the signatures of the indorsers, but such knowledge is incumbent upon the holder of the paper, as he must be presumed to know his title, and in presenting the paper he guarantees the genuineness of the signatures of the prior indorsers.''

In the course of its opinion in the Bangs case, *supra,* the Massachusetts court said:

''If the suit were between the bank or drawee and a party who took the check in the usual course of business, finding it in circulation, or even by first indorsement from the payee, the loss would fall on the bank, because, having the greater means and opportunity to become familiar with the handwriting of their correspondents or depositors, the law presumes that drawees will know these signatures, and be able to detect forgeries. * * * But this responsibility, based upon presumption alone, is decisive only when the party recovering the money has in no way contributed to the success of the fraud, or to the mistake of fact under which the payment was made.''

And further citing Ellis v. Ohio Life Trust Co., 4 Ohio State, 628; Peoples' Bank v. Franklin Bank, 88 Tenn., 297; Espey v. Bank of Cincinnati, 18 Wall., 604, and one or two other cases, and distinguishing First National Bank of Orleans v. State Bank, 22 Neb., 769; Judge Pryor closed the opinion in the Georgetown Bank case, as follows:

''While it rests upon one signing his own name, or that of a bank affixing its signature to notes to pass as current money, to know that the signature is genuine, it also rests on a bank, where checks are drawn upon it in the name of its customer, to know his signature, and instead of the party to whom the money is paid being required to show negligence in the bank paying the money, it devolves on the drawee to show negligence in the indorser or holder, who in good faith, has received the

money, before· the drawee can escape liability. Where the parties are equally innocent the drawee is the loser.

"There is no precedent in this court on the question, still we are not inclined to follow the views of text writers, in the face of so many adjudications on the subject, and with no case presented that goes further than to modify the rule in cases where bad faith or negligence is to be attributed to the holder or indorser when taking the check."

And as no bad faith or negligence was attributed to the Fayette National Bank when it took the check, the exceptional rule was applied in that case, and the Georgetown Bank was denied a recovery. The effect of that decision, however, is, that when the holder or indorsing bank is guilty of bad faith or negligence, the exceptional rule does not apply, and money paid under mistake may be recovered under the general rule.

As was well said by Judge Pryor, the exceptional rule which does not permit the drawee to recover money paid by mistake, is a harsh rule, and should be kept strictly within its bounds, and not extended. If the indorser or holder has been guilty of the first negligence, there is no good reason why he should not bear the loss, under the general rule which permits the recovery of money paid under a mistake.

This view is supported by the great weight of· authority, although there are a few cases to the contrary.

In Ellis v. Ohio Life Insurance & Trust Co., 4 Ohio State, 628, 64 Am. Dec., 610, a check purporting to have been drawn by Davis & Co., on the Mechanics & Traders Bank was presented by a stranger to the defendant bank, which paid the check. The check proved to be a forgery. No question was asked as· to who the presenter was, or as to his right to the check, and the forgery was not discovered until ten days afterwards, when the check was returned to the defendant and repayment demanded.

In the course of a very able opinion by Judge Ranney, it is said:

"In all such cases, either of acceptance or payment, the foundation upon which the drawee is made to suffer the loss is the imputed negligence in accepting or paying, until he has ascertained the bill to be genuine; and, in case of payment, notwithstanding he has done it in mistake, and parts with his money without receiving the supposed equivalent, and notwithstanding the holder

has obtained the money without consideration, the former cannot be relieved from the consequences of his negligence at the expense of the latter, and the latter may in equity and good conscience retain what he has got. But this stern rule is only exerted in favor of a holder without fault, and for a valuable consideration; and we deem it equally clear that he may, by his own negligent conduct, place himself in such an inequitable position in reference to the drawee as to deprive himself of the benefit of this rule, and it makes it unjust and inequitable that he should keep what he has obtained by a mistake, and for which he has given no equivalent.

"We do not here speak of negligence as a matter at large. We only intend to deal with the case before us; and that only requires us to say that where the negligence reaches beyond the holder, and necessarily affects the drawee, and consists of an omission to exercise some precaution, either by the agreement of the parties or the course of business devolved upon the holder, in relation to the genuineness of the paper, he cannot, in negligent disregard of this duty, retain the money received upon a forged instrument. Both these propositions, we think, will be found fully sustained, if not in every particular, by direct adjudications, by the fixed principles upon which nearly all the cases have proceeded."

In the later case of First National Bank of Belmont v. First National Bank of Barnesville, 58 Ohio State, 207, the court reaffirmed the doctrine it had theretofore announced in Ellis v. Ohio Life Insurance & Trust Co., *supra*, saying:

"In the case now under consideration the drawer's name was a forgery, but the name of the payee indorsed on the check was genuine, having been written by the cashier at the request of the payee.

"It has been urged that if the payee had been required by the cashier to write his name upon the check, that it might have shown that his name in the body of the check had been written by himself; and thus lead to a detection of the forgery. But in the above case of First National Bank of Danvers v. First National Bank of Salem, the payee indorsed the check, and the handwriting was the same in both names, payee and indorser, and yet the forgery was not thereby detected, and the court attaches no importance to the fact in its decision of the case. In that case, and in the above case in the 4 Ohio

St., 628, and in nearly all the cases in which the money has been recovered back, the bank purchasing the check or bill took it from an unidentified stranger, and this has often, though not always, been held to be such negligence as would authorize a recovery of the money.''

In Germania Bank v. Boutell, 60 Minn., 189, 27 L. R. A., 635, 51 Am. St. Rep., 519, the action was by the Germania Bank against Boutell to recover money paid on a forged check drawn by Seymore to his own order and against the account of Osborne & Clark in the Germania Bank. Boutell cashed the check without making any inquiry to ascertain its genuineness, although the places of business of both Osborne & Clark and the bank were nearby. The forgery was discovered in about two weeks, whereupon the bank returned the check to Boutell and demanded that he repay the money which he had received thereon.

After referring to the general rule which allows money paid under mistake to be recovered, and the exceptional rule denying a recovery to the bank who pays the forged check of its customer, the court said:

''But while the general doctrine is too well established to be overruled or disregarded, yet it is undoubtedly true that the trend of the modern authorities is to impose upon it some limitations and modifications; so that it is not always easy to definitely state when a case falls within the doctrine, or comes within the general rule as to money paid by mistake. From what examination we have been able to make of the authorities, we have arrived at the conclusion that there are very few well-considered cases which go further than to hold that the bank may recover back money paid on a check to which the signature of one of its customers was forged, when there was a lack of good faith on the part of the payee towards the bank, as when he knew the check was forged, or knew of circumstances casting suspicion on its genuineness not known to the bank, and which he did not communicate to it, and where the holder was negligent in not making due inquiry as to the validity of the check before he took it, and the drawee, having a right to presume that he had made such inquiry, was itself thereby excused from making inquiry before paying it. In the first case the holder is really a party to the fraud, and is not a good-faith holder. In the second case, he has, by his negligence, contributed to the consummation

of the mistake on part of the drawee by misleading him.''

In Peoples Bank v. Franklin Bank, 88 Tenn., 299, 17 Am. St. Rep., 884, the name of Young, a depositor of the Peoples Bank, was forged to a check drawn on that bank payable to the order of Morgan. Morgan's name was also forged as an indorser on the check. The check with the forged name of Young the maker, and of Morgan the indorser, was presented to the defendant, the Franklin Bank, which cashed it and transmitted it after indorsing it, to the Peoples Bank, for payment. The Peoples Bank had an account with the Franklin Bank, and upon the receipt of the check the Peoples Bank, passed the amount thereof to the credit of the Franklin Bank. The Peoples Bank did business in Springfield, Robertson County, Tennessee, while the defendant bank did business at Clarksville, in Montgomery County. The forgery was discovered thirty-one days afterwards, when Young came to examine his pass-book, together with the returned checks. Thereupon the Peoples Bank cancelled the charge against Young, the depositor, and promptly notified the Franklin Bank of the forgery and demanded that it repay the amount it had received upon the check; and upon its refusal to do so, the Peoples Bank sued to recover it.

It will thus be seen that the Tennessee case is on all fours with the case at bar, the names of the maker and the indorser both having been forged.

The trial court in the Tennessee case applied the rule which required the drawee at its peril to know the genuineness of the signature of its depositor, and dismissed the plaintiff's bill.

In reversing that judgment the Supreme Court of Tennessee said:

''Notwithstanding some conflict of authority upon the subject, a careful investigation of the adjudged cases and of the text-books leads us to the conclusion that the bank can recover of a party to whom payment is made on a forged check, indorsed by the party to whom paid where the party to whom paid has been guilty of negligence in receiving and indorsing the check; for, notwithstanding the negligence, to some degree, that the paying bank has been guilty of in paying the forged check, without detecting the forgery of its depositor's signature, it often happens, or may

happen, that the party to whom payment is made has been guilty of the first negligence in purchasing and indorsing the forged paper. The bank upon whom the check is drawn, in the practical administration of banking business, may well be lulled to a less careful scrutiny of its depositor's signature of a check, where the same is endorsed by another bank with which it is in correspondence or interchange of business, than it would exercise in accepting and paying the same check, not so indorsed, to a stranger. The indorsement of the check, by the payee, may be said, ordinarily, to be a guaranty of the genuineness of the indorsements theretofore on the paper, and also of the genuineness of the drawer's signature, subject, perhaps, to some exceptions in particular cases, as, for instance, where the indorsement is made after the genuineness of the preceding signatures has been approved by the paying bank. Applying these principles to the case at bar, we are of opinion, and so adjudge, that the first fault was with the defendant bank. This bank accepted and cashed a check drawn on a bank in another county, to which the name of the drawer and the payee had both been forged, and so far as this record discloses, without requiring any identification of the parties to whom such payment was made; certainly without reserving any evidence of the identity of such parties for the benefit of itself or of others who might be injured by such forgery. The complainant bank, upon receiving such check, in due course of mail, for deposit to credit of defendant, might well rely upon the exercise of due prudence and diligence on the part of its depositor, the defendant bank, and might well regard the latter's indorsement of the check as significant of the fact that such prudence had been exercised, and if not, that the indorsement would stand as a guaranty to the paying bank from loss that might otherwise fall upon it by reason of its passing the amount of the check to the credit of such indorser.''

In support of the conclusion there reached, the court cites 3 Am. & Eng. Enc. of L., 223, 225; Chitty on Bills, 13 Am. Ed., 431, 485; 2 Parsons on Notes & Bills, 80; Bolles on Banks & Depositors, sec. 189.

In First National Bank of Lisbon v. Bank of Wyndmere, 15 N. D., 299, 10 L. R. A. (N. S.), 49, 125 Am. St. Rep., 588, the plaintiff and defendant were banking cor-

porations, located respectively at Lisbon and Wynd-
mere, North Dakota. Bixby & Marsh were depositors
in the Lisbon Bank. On July 1, 1905, the Bank of Wynd-
mere presented to the Lisbon bank for payment, a forged
check purporting to have been drawn by Bixby & Marsh
upon the Lisbon bank, in favor of Theodore Larson, for
$60.25, dated June 27, 1905, and indorsed in blank by
the payee. It also bore the indorsement of the Bank of
Wyndmere and each of the several banks through whose
hands it had passed in the usual course of collection,
each indorsing bank having expressly guaranteed the
genuineness of previous indorsements.

Believing the check to be genuine, the Lisbon bank
paid it and charged it to the account of Bixby & Marsh;
but when that firm examined its checks on July 20th, it
was immediately discovered the check was a forgery.
The Lisbon bank immediately notified the Bank of Wynd-
mere of the forgery, and returning the check, demanded
repayment, and subsequently sued to recover the money.

The North Dakota Supreme Court repudiated the
rule announced in Price v. Neal, and held that the drawee
of a forged check, who has paid the same without de-
tecting the forgery, may, upon the discovery of the
forgery, recover the money from the party who received
the money, even though the latter was a good faith
holder, provided the latter had not been misled or pre-
judiced by the drawee's failure to detect the forgery,
and that the burden of showing that he had been misled
or prejudiced by the drawee's mistake rested upon him
who claims the right to retain the money, for that rea-
son.

And, in refusing to follow the exceptional rule of
Price v. Neal, the court further said:

"Being convinced, as we are, that this doctrine ad-
vocated by the great majority of the cases which have
come to our attention, to the effect that a drawee of a
check should be excepted from the ordinary rules re-
lating to the right to recover money paid by mistake, is
unsound and has never been adopted in this state by
usage or statute, it would be nothing less than usurpa-
tion of legislative power by this court to declare that
rule to be the law of this state because courts in other
states have so held. That the rule in question is un-
sound in principle, and unjust, is almost universally
admitted; and the courts are showing an increasing ten-

dency to discard it. We think, therefore, that we are showing no disrespect to precedent in taking the stand towards which the modern decisions are unmistakably tending, and from which it is generally conceded there should have never been any departure. We therefore reject as unsound the doctrine that a drawee of a check should be excepted from the general rule in relation to the recovery of money paid by mistake. The drawee is presumed to know the signature of the drawer of the check or draft; and the holder of such check or draft, who has acquired it in good faith, has the right to act in reliance on that presumption, provided he himself has omitted no duty the performance of which would have prevented the success of the fraud. Consequently, if the drawee pronounces the check genuine by paying it or otherwise honoring it, the holder, who has acted in good faith and without negligence, may safely rely upon the judgment of the drawee, and act accordingly. The drawee cannot, under such circumstances, recall his acceptance or payment to the detriment of the party who has rightfully relied upon his decision. In such a case the party who received the money has the superior equity, and he may justly retain the money, although he was not originally entitled to receive it.

"But, as is usually the case, when the party who has collected the check had previously cashed it or taken it in exchange for commodities, there is no reason why he should not refund. Everyone with even the least experience in business knows that no business man would accept a check in exchange for money or goods unless he is satisfied that the check is genuine. He accepts it only because he has sufficient confidence in the honesty and financial responsibility of the person who vouches for it. If he is deceived, he has suffered a loss of his cash or goods through his own mistake. His own credibility, or recklessness, or misplaced confidence, was the sole cause of the loss. Why should he be permitted to shift the loss due to his own fault in assuming the risk, upon the drawee, simply because of the accidental circumstance that the drawee afterwards failed to detect the forgery when the check was presented? Our views find much support in many of the cases which still cling more or less tenaciously to the negligence rule, notably the following: First Nat. Bank v. First Nat. Bank, 151 Mass., 280, 21 Am. St. Rep., 450, 24 N. E., 44; Ellis v.

Ohio Life Ins. & T. Co., 4 Ohio St., 628, 64 Am. Dec., 610; Peoples Bank v. Franklin Bank, 88 Tenn., 299, 6 L. R. A., 724, 17 Am. St. Rep., 884, 12 S. W., 716; Canadian Bank v. Bingham, 30 Wash., 484, 60 L. R. A., 955, 71 Pac, 43; First Nat. Bank v. State Bank, 22 Neb., 769, 3 Am. St. Rep., 294, 36 N. W., 289; First Nat. Bank v. First Nat. Bank, 4 Ind., App., 355, 51 Am. St. Rep., 221, 30 N. E., 808. The case of McKleroy v. Southern Bank, 14 La. Ann., 462, 74 Am. Dec., 438, directly supports our views, and we are gratified to note that our views are in accord with those generally advocated by the text writers. We therefore hold that drawees of checks and drafts are not to be excepted from the general rule which permits the recovery of money paid by mistake. We hold that a drawee who has, by mistake, paid a spurious check or draft, may recover the money paid, unless the party receiving the money has been misled to his prejudice by the drawee's mistake. If any such facts exist, they are best known to the defendant, and it is his duty to prove them. The complaint discloses *prima facie* cause of action by alleging the payment by mistake.''

And, in Ford v. Peoples Bank of Orangeburg, 74 S. C., 180, 10 L. R. A. (N. S.), 63, 114 Am. St. Rep., 986, 7 A. & E. Ann. Cas., 744, it was held under what is sometimes termed the fault or negligence rule, that the drawee of a forged check may recover the amount paid upon it to one whose conduct has been such as to mislead him or induce him to pay the draft without the usual security against fraud

In Greenwald v. Ford, 21 S. D., 28, it was held that the principle that the drawee is bound to know the signature of the drawer of a bill or check which he undertakes to pay, is not decisive in favor of the payee of a forged bill or check to which he has himself given credit by his indorsement.

In American Express Co. v. State National Bank, 27 Oklahoma, 824, 33 L. R. A. (N. S.), 188, it was held that a payee receiving money from a bank upon a check purporting to be drawn upon it by one of its depositors, but the signature of which was in fact forged, was not entitled to retain the same except upon the following combination of facts: (1), That the payee was not negligent in receiving the check; (2), that the payer was lacking in due care in paying the same; and (3), that upon

the payer's action the payee had changed his position, or would be in a worse condition if the mistake was corrected than if the payer had refused to pay the check at the time of its presentment.

In speaking of what it calls the "old doctrine" that a bank was bound to know its depositor's signature, and could not recover money paid upon a forgery of the drawer's name, because it was said the drawee was negligent not to know the forgery, and having parted with his money by reason of his own negligence he could not be permitted to recover it back, the Oklahoma Supreme Court said:

"The leading case sustaining this proposition is Price v. Neal, 3 Burr, 1354, 1 W. Bl., 390, decided in 1762. A great many of the courts that continue to follow the old rule criticise it, but follow it upon the ground that it has been established by decisions which have been so long acted upon that it is not proper to disturb them. All the text-book writers on Banks and Banking that we have access to disapprove the old rule as unsound and unjust. Mr. Morse says of it: 'This doctrine is fast fading into the misty past, where it belongs. It is almost dead, the funeral notices are ready, and no tears will be shed, for it was founded in misconception of the fundamental principles of law and common sense.' 2 Morse, Banks & Bkg., sec. 464. Mr. Bolles says it is a hard rule. 'It runs against the great rule that money paid by mistake may be recovered back, which is constantly growing in judicial favor.' 2 Bolles, Modern Law of Bkg., 721. Magee and Zane say that the rule formerly prevailing has been modified by the courts with a view to doing equity between the parties. Cyc. Law & Proc., states the modern rule to be that when payment is made to the holder of forged paper who has come into possession of it without any fault on his part, and his situation would be rendered worse if compelled to refund than it was before receiving payment, the money cannot be recovered from him. If, however, he has been negligent in any regard, he cannot retain the money. To justify him in doing so the bank alone must have been negligent. If neither party has been negligent, or both have been, then the bank can recover the money. A great many authorities are compiled in a note purporting to sustain the text, and all do so, we think, to a greater or less extent. That the old rule is

unsound and illogical is unquestionably true. It is based upon the theory that the mere fact that B was negligent gives A a right to B's property, which A did not have before the negligence, without regard to the question whether A has sustained any loss by the negligence or not. In any other case involving the question of negligence, it is not enough to create legal liability, or to give A a right to acquire or retain the property of B, to show merely that A has not been negligent. One more element is necessary, namely, that damage to A, being himself innocent in the matter, should naturally and proximately result from B's negligence. 2 Morse, Banks & Bkg., *supra*."

We are not, however, required in the decision of this case to disapprove the rule of Price v. Neal, since the facts here bring this case within the scope of the rule in cases of forged indorsements. According to the weight of authority, under the exceptional rule a bank which cashes a check drawn upon another bank, without requiring proof as to the identity of the person presenting the same, or making inquiry in regard to him, the amount of which check is afterwards paid to it by the drawee, is liable to the drawee for the amount so paid, where the check proves to be a forgery; it having been guilty of the first fault. First National Bank v. State Bank, 22 Neb., 769, 3 Am. St. Rep., 294; First National Bank v. First National Bank, 151 Mass., 280, 21 Am. St. Rep., 450; Peoples Bank v. Franklin Bank, 88 Tenn., 299, 6 L. R. A., 727, 17 Am. St. Rep., 884; Ellis v. Ohio L. I. & T. Co., 4 Ohio St., 628, 64 Am. Dec., 610; Newberry Savings Bank v. Bank of Columbia, 91 S. C., 294, 38 L. R. A. (N. S.), 1200.

In Newberry Savings Bank v. Bank of Columbia, *supra,* a man who represented himself to be R. L. Crooks, and who had in his possession a depositor's pass-book issued to R. L. Crooks by the Newberry Savings Bank, went into the Bank of Columbia, on March 21, 1907, and asked to have cashed a check purporting to be signed by Crooks for $100.00, in favor of the Bank of Columbia and drawn on the Newberry Savings Bank. Gibbs, the cashier of the Bank of Columbia, asked Norwood, the cashier of the Newberry Savings Bank, by telephone, if a check of R. L. Crooks on his bank for $100.00 would be good, and on receiving an affirmative answer, Gibbs cashed the check. The Bank of Colum-

bia then indorsed the check and sent it forward for collection in the usual way, and the Newberry Savings Bank paid the check on its presentation by the Exchange Bank of Newberry. A second check for $150.00, dated April 1, 1907, was cashed by the Bank of Columbia and paid by the Newberry Savings Bank, under similar circumstances.

In May, 1908, more than a year after these transactions, Crooks having occasion to go to the Newberry Savings Bank, it was then discovered that the man to whom the Bank of Columbia had paid the money was not Crooks, and that his name had been forged. After demand made and refusal to refund, the Newberry Savings Bank sued the Bank of Columbia and obtained judgment. Upon the trial it appeared that the drawer of the checks was a stranger to the officers of the bank of Columbia, and it was not shown that any identification was required of him.

In affirming the judgment, the South Carolina Supreme Court said:

"The rule that a bank should know the signature of its customers is not available to one who represents to the bank that he holds in his hand the check of the customer without having taken precautions to ascertain the identity of the person with whom he was dealing. The law is thus stated in Ford v. Peoples Bank, 74 S. C., 180, 10 L. R. A. (N. S.), 63, 114 Am. St. Rep., 986, 54 S. E., 204, 7 Ann. Cas., 744, quoting from National Bank v. Bangs, 106 Mass., 441, 8 Am. Rep., 349: 'To entitle the holder to retain money obtained by a forgery, he should be able to maintain that the whole responsibility of determining the validity of the signature was placed upon the drawee, and that the negligence of the drawee was not lessened, and that he was not lulled into a false security, by any disregard of duty on his (the holder's) own part, or by the failure of any precaution which, from his implied assertion in presenting the check as a sufficient voucher, the drawee had a right to believe he had taken.' This case is much stronger in favor of the drawee bank than the Ford case, for there the bank which received the money did not take the draft from the person who signed it, but from an indorsee in the usual course of business.

"All of the authorities cited by the appellant relate to the obligation of the payee bank to know the signa-

ture of its customers as against a bank not dealing with the drawer, but taking the check by indorsement from others. None of them, and none that we have been able to find, exempt a bank from liability to refund money which it has received on a forged check taken by it directly from the forger. On the contrary, in Bank of St. Albans v. Farmers & M. Bank, 10 Vt., 141, 33 Am. Dec., 188, the court said: 'It seems now well settled that a person giving a security in payment or procuring it to be discounted vouches for its genuineness.' The same principle is laid down in National Bank v. Bangs, *supra.* The courts with practical unanimity go at least to the extent of holding that a bank which takes a forged check without taking due care to ascertain its genuineness must refund the money paid to it by the drawee bank. See note to First Nat. Bank v. Bank of Wyndmere, 10 L. R. A. (N. S.), 58.''

It has been said that there are only four cases holding the contrary, namely, Bank of St. Albans v. Farmers & M. Bank, 10 Vt., 141, 33 Am. Dec., 188; Soft Springs Bank v. Syracuse Savings Inst., 62 Barbour, 101; Com. & F. Nat. Bank v. First Nat. Bank, 30 Md., 11, 96 Am. Dec., 554, and Howard v. Mississippi Valley Bank, 28 La. Ann., 727, 26 Am. Rep., 105. Of these cases, the first was decided in 1838, the second in 1863, the third in 1868, and the fourth in 1876.

Of these cases it has been said that, ''Insofar as they allow the benefit of the exception under circumstances showing negligence or misconduct on the part of a bank purchasing, or taking for collection, a check drawn upon another bank, they are wholly irreconcilable with the great weight of judicial decision and opinion, as well as variant from the spirit of the exception declared in Price v. Neal, and the great number of subsequent decisions in which it has been observed.'' 36 L. R. A. (N. S.), 610.

To this list there may possibly be added a fifth case —Bank of Williamson v. McDowell County Bank, 66 W. Va., 545, 36 L. R. A. (N. S.), 605, decided in 1909.

In that case Young was a depositor of the Bank of Williamson. In September, 1907, a stranger presented to the McDowell County Bank a forged check drawn upon the Bank of Williamson for $100.00, and purporting to have been drawn by Young and payable to the order of George Horner. The stranger wrote the name of George

Horner on the back of the check and delivered it to the McDowell County Bank for collection. That bank did not cash the check or place the amount to the credit of Horner; on the contrary, it took the check for collection, and forwarded it for that purpose. On September 18, 1907, the Bank of Williamson paid the check to the Mingo County Bank, the collecting bank, which, in turn paid it to the McDowell County Bank, where it was deposited to the credit of the person calling himself George Horner, who afterwards withdrew it from the bank. In November, 1907, the forgery was discovered upon the appearance of Young at the Bank of Williamson for the purpose of withdrawing his money; and upon his disavowal of any knowledge of the check, the money was replaced to his credit and a demand made upon the McDowell County Bank for reimbursement. The person who delivered the check to the McDowell County Bank for collection, and who afterwards received the money from that bank, was wholly unknown to its officers, and they required from him no identification. No inquiry was made as to who he was. The failure to make inquiry or require identification, together with the indorsements and guarantees stamped on the back of the check, were the circumstances relied upon by the Bank of Williamson as fixing the liability upon the McDowell County Bank.

Under these facts the West Virginia Supreme Court of Appeals denied a recovery to the Bank of Williamson, upon what seems to us to be a misapplication of the rule above shown by the great weight of authority, although the opinion fully recognized the existence of the rule, and the exceptions thereto.

The decision denying the recovery was based upon the single fact that both banks were negligent—the Bank of Williamson in failing to require an identification of the stranger, and the failure of the McDowell County Bank in paying the check without having discovered the forgery.

The opinion says:

"Negligence or omission of duty, on the part of the first taker, causing, or likely to cause, injury to the drawee, is the circumstance that deprives the former of the benefit of the exemption of dealers in commercial paper from the operation of the general rule, allowing recovery of money paid under a mistake of fact. Fail-

ure of duty, not necessarily the actual cause of the injury, has this effect. No inquiry as to whether the drawee was really misled is made. It is enough that there was technical negligence. The exemption rests upon the assumption of innocence in both parties. If both are at fault, as in this case, it seems to follow that neither, while claiming, or accorded, the benefit of the exception to the general rule, should be permitted to deny its protection to the other. It is an arbitrary rule of commercial law, and the reasoning which justifies it, when both parties are innocent, justifies it also when both parties are at fault. It was the duty of the drawee to determine at its peril the genuineness of the signature of its depositor, and its sole right to demand reimbursement from the defendant rests upon technical fault in the latter. This may or may not have occasioned the injury to the former, but an arbitrary rule, founded upon public policy, imposes liability, without inquiry as to the actual cause of injury.''

This, however, seems to be a misapprehension of the full meaning of the rule announced in Price v. Neal, and the exception thereto, which places the case where both banks are negligent back under the general rule which allows a recovery where money is paid under a mistake.

The exceptional rule denying a recovery to the drawee who paid a forged check of its depositor, is founded upon the fact that the law imputes technical negligence to the drawee in failing to discover the forgery, and that the holding bank was not so negligent. The exceptional rule has been expressly placed upon that ground; and wherever the holder or purchaser was guilty of negligence, the case was lifted out of the exceptional rule and placed back under the general rule, which permits money paid under a mistake to be recovered. U. S. v. Nat. Exchange Bank, 214 U. S., 302, 16 Ann Cas., 1183.

In holding that there could be no recovery because both parties were guilty of negligence, the West Virginia Supreme Court of Appeals, as we understand its language, instead of adhering to the rule declared in Price v. Neal, and while expressly admitting the correctness of the long line of decisions enforcing it under circumstances calling for its application, wholly fails to recognize the rule in its application in the case of Bank of Williamson v. McDowell County Bank, *supra,* since the

rule, as above pointed out, is based upon the negligence necessarily imputed to the drawee—the holder being guilty of no negligence. If the holder was negligent in any respect, he could not retain the money; to justify him in so doing, the drawee alone must have been negligent. If neither party has been negligent, or both have been, the case is taken out of the exceptional rule and comes under the general rule allowing the drawee to recover the money. That this is .the effect of the rule is pointed out in 5 Cyc., 546, above quoted. That the Court recognized this to be the rule in the Bank of Williamson case appears from the following language taken from that opinion:

"If a bank in purchasing such paper omit all inquiry as to the identity of the payee, and hand over the money to some person wholly unknown to it, it is not in a position, on discovery of the fraud, to give the injured drawee any information or render it any aid in seeking the apprehension of the criminal or recovery of the money from him. The drawee has the right to assume that these duties have been performed. The general practice of bankers to make reasonable inquiry as to the identity of the payee in purchasing commercial paper is a matter of common knowledge and judicial cognizance. Therefore the endorsement of a purchasing bank, not qualified or limited in any respect, amounts to a representation to the drawee that this precaution has been taken. Upon that indorsement, the drawee has the right to rely to that extent, and, if identification has not been required, the indorsement amounts to an imposition by the purchasing bank upon the drawee. Thus we have two prejudicial acts, one of omission and the other of commission. The purchasing bank, having assumed to perform a duty which the drawee would have performed but for its intervention, neglected to perform it. Not having performed it, it has falsely represented by its indorsement that it did.

"Freedom from fault on the part of the purchaser is one of the requisites or conditions of the rule exempting him from liability under the general law. This was made plain in the original case of Price v. Neal."

And again, in referring approvingly to the opinion in First National Bank v. Ricker, 71 Ills., 439, 22 Am. Rep., 104, the West Virginia Supreme Court of Appeals said:

"It declares that the drawee or payer of a forged check can recover back the amount paid on it when the holder or payee has been at fault or guilty of fraudulent practices which may have thrown the drawee off his guard.  It says the holder must refund to the drawee, if the former has been at fault, notwithstanding the duty of the drawee to determine at his peril the genuineness of the signature of the drawer."

It is there further pointed out that while the rule is based upon the innocence of both parties, some of the cases have allowed a recovery because of the negligence on the part of the bank obtaining payment, which contributed to the deception of the drawee, and that these cases do not constitute a modification of the rule; they simply do not come within the operation of the rule.

The decision in Bank of Williamson v. McDowell County Bank was not, however, placed upon this latter ground, and insofar as the reason for the decision is stated, it seems to be irreconcilable with the general principles of law therein announced and approved. That case might well have been rested, although it seems not to have been done, upon the fact that the McDowell County Bank took the check for collection and did not pay the money to the forger until after the check had been honored, as genuine, by the Bank of Williamson, thereby placing the McDowell County Bank in a very unfavorable position.

It has also been suggested that Farmers & Merchants Bank v. the Bank of Rutherford, 115 Tenn., 64, 112 Am. St. Rep., 817, overrules Peoples Bank v. the Franklin Bank, 88 Tenn., 209, 6 L. R. A., 727, 17 Am. St. Rep., 884, heretofore considered.  That, however, is not the effect of the later decision, since the check in that case was payable to bearer, and no identification or indorsement was necessary; and, that being true, it was held the paying bank was in no way guilty of negligence in failing to require the identification of the forger, which was the basis of the decision in Peoples Bank v. Franklin Bank, *supra,* and other similar cases.

The case at bar is even stronger for the drawee than many of the cases above referred to, since here both the indorsement and the maker's name are forgeries.  In this case the Maysville Bank first parted with its money upon the forged indorsement, while the Augusta Bank subsequently parted with its money upon the forgery

of the maker's name. Clearly, the Maysville Bank would have received nothing from a forged indorsement even though the check had been genuine. In such a case, it would have been liable to the real holder. Ann. Cas., 1912 D., 497. When, therefore, it collected the money on the check in question from the Augusta Bank, it collected something to which it was not entitled under the indorsement through which it claimed. Neither can it be said that the Maysville Bank will be put in a worse condition, if it be required to pay this money to the Augusta Bank, for the good reason that the Maysville Bank was never entitled to the money. When it paid the check upon the forged indorsement, it lost its money, and by subsequently inducing the Augusta Bank to pay it, it received money to which it was in no way entitled; and, that being true, it has no right to withhold it. Leather Mfg. Bank v. Merchants Bank, 128 U. S., 26; U. S. v. Nat. Exchange Bank, 214 U. S., 302, 16 Ann. Cas., 1184.

That this court was right when it said in the Georgetown Bank case, *supra,* that the rule in Price v. Neal was a harsh rule and should not be extended, is not only apparent from the continued and severe criticism to which it has been subjected, but from the inability of the commentators to agree upon the reason for the rule and the legal principle upon which it should be made to rest.

In an unusually interesting and instructive article in 4 Harvard Law Review, 297, entitled "The Doctrine of Price v. Neal," Prof. Ames takes the ground that the true principle upon which cases like Price v. Neal are to be supported, is that far-reaching principle of natural justice, that as between two persons having equal equities, one of whom must suffer, the legal title must prevail. And, he would sustain the rule which allows the drawee to recover from a holder under a forged indorsement, as follows:

"Upon whom finally should the loss fall, when a party to a bill or note pays it to a holder, who could maintain no action against the payor, because one of the indorsements in his chain of title is a forgery? Here, too, it may be urged, the equities are equal, and the holder, having obtained the money, should keep it. But this case differs in an important particular from all the cases hitherto considered, and another principle comes

into play, which overrides the rule as to equal equities. In all the other cases the bill or note, however valueless it may have been, belonged to the holder. In the case of the forged indorsement, on the other hand, the bill or note belongs, not to the holder, but to him whose name was forged as indorser. The holder, who bought the bill, was therefore guilty of a conversion, however honestly he may have acted. When he collected the bill, inasmuch as he obtained the money by means of the true owner's property, he became a constructive trustee of the money for the benefit of the latter. The true owner may therefore recover the money as money had and received to his use. If he recovers in his action, the property in the bill would pass to the holder; but the bill would be of no value to him, for, if he should seek to collect it, he would be met with the defense that it had been paid to him once already. If, on the other hand, the true owner prefers to proceed on the bill against the maker or acceptor, he may do so, and the prior payment to the holder, being made to one without title, will be no bar to the action. The maker or acceptor, however, who pays to the true owner, is entitled to the bill, and should be subrogated to the owner's right to enforce the constructive trust against the holder, and could thereby make himself whole. Consequently, whatever course the true owner elects to pursue, the loss must ultimately fall on the holder. As a matter of positive law, the maker or acceptor, who pays the holder claiming under a forged indorsement, is allowed to proceed against the latter directly, without first paying the true owner. This, as a matter of legal reasoning, is believed to be unwarranted. But as, in the result, the loss comes, where upon the legal principle of subrogation it ought to come, it is not worth while to be too critical.''

Prof. Keener, in his work on ''Quasi-Contracts,'' considers the rule announced in Price v. Neal as wholly anomalous, and treats it in a note on page 154 to the chapter upon the recovery of money paid under a mistake, for the avowed reason that it is impossible to reconcile it with many of the legal principles announced in his text. After saying it is impossible to reconcile the exceptional rule which denies a recovery of money paid under a mistake as to the genuineness of negotiable instruments with the principles applicable to the general rule which permits a recovery of money paid under mis-

take, Prof. Keener points out that the exceptional rule cannot logically be sustained upon any of the different grounds usually relied upon—that the drawee is guilty of negligence; that between equal equities the law leaves the money where it finds it; or of subrogation in the case of money mistakenly paid under a forged indorsement— thus differing radically from Prof. Ames, who maintains the latter view in his article heretofore referred to. In criticising the theory of allowing a recovery upon the principle of subrogation, Prof. Keener says:

'The fact that the action is brought at law in the name of the party who made the payment, is fatal to allowing a recovery on the theory of subrogation, since the result is to be regarded as anomalous in point of procedure. Equally fatal to this theory is the fact that the plaintiff is allowed to recover without first paying the true owner. The theory of subrogation, however, is open to the further objection that a recovery would undoubtedly be allowed in cases on the line of reasoning adopted by the courts, where the theory of subrogation would have to be denied.

''Subrogation of course implies a right in another which a party seeks to acquire against the defendant. A party claiming through subrogation claims by virtue of a derivative right, and a derivative right necessarily presupposes an original right. If, therefore, for any reason the true owner of the bill could not maintain an action against the holder thereof for a conversion of the bill, or could not sue at law in a court for money had and received to recover the proceeds received in payment thereof, then a drawee dependent upon the doctrine of subrogation could not on the theory of subrogation recover the money paid by him under mistake as to the genuineness of an indorsement.

''In conclusion it is submitted that on no theory of quasi-contract can the decisions reached in the cases considered in this note be reconciled, or the results reached in many of the cases be justified.''

These two articles by masters of the subject strongly tend to support the contention that the exceptional rule is unsound. But if it be treated as sound, both under the great weight of authority and the reason for it, the case at bar does not come within it, since the defendant claims under a forged indorsement. We are of opinion, therefore, that the appellant was entitled to recover

under the general rule which permits a recovery of money paid under a mistake, and that the demurrer to the petition should have been overruled.

Judgment reversed for further proceedings consistent with this opinion.