## Louisa National Bank v. Kentucky National Bank.

(Decided May 26, 1931.)

303

304

VINSON & MILLER for appellant.

MARTIN & SMITH for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—
Affirming.

This action is by the Kentucky National Bank, the drawee of a check for $600, against the holder, the Louisa National Bank, which paid the check to the payee, Fred Banfield, a stranger, without inquiry, and without requiring his identification. The action was tried by the court without the intervention of a jury on an agreed statement of facts. The judgment was for the Kentucky National Bank, and the Louisa National Bank appeals.

As a matter of brevity and convenience, we will designate them herein as the Bank of Kentucky and the Bank of Louisa. The facts are substantially as follows: On the 25th of October, 1928, Fred Banfield, a stranger to the Bank of Louisa, during business hours, in the regular course of business, presented himself to that bank with two checks, one for $600 dated October 19, 1928, purporting to have been executed and delivered to him by Armstrong, a prosperous farmer of Boyd county, drawn on the Bank of Kentucky at Catlettsburg, and payable to himself for cattle. The other had the name of Lindsey Fannin signed to it; it was drawn on the Bank of Kentucky for $400, and payable to Banfield. At the time he presented the checks he proposed to open an account with the bank of Louisa by depositing them to his credit. He suggested to James B. Hughes, the teller of the Bank of Louisa, who received the checks from him, that he could not write his name, and requested Hughes to indorse the checks for him, which he did, writing

thereon, "Fred Banfield, 10/25/28." Hughes received the checks so indorsed, deposited them to his credit, and paid him $600 in cash. The checks were thereupon indorsed, by the Bank of Louisa in these words:

"Pay to the order of
any bank or banker
all prior endorsements guaranteed

"The Louisa National Bank, Louisa, Ky. 73—
252.
"M. F. Conley, Cashier."

They were then mailed to the Ashland National Bank, Ashland, Ky., the correspondent of the Bank of Louisa for collection, which were received, indorsed, and transmitted to the Bank of Kentucky, at Catlettsburg, Ky., for payment. The payment of the $400 check was refused by the Bank of Kentucky, for the reason that Fannin had no account with it. The $600 check was paid, retained by the Bank of Kentucky, and charged to the account of Armstrong. Within about a week thereafter, Armstrong was at the Bank of Kentucky, at Catlettsburg, when the bank, because his signature to it was signed with a lead pencil, presented to him the check. He declared it a forgery. The Bank of Kentucky immediately notified the Bank of Louisa of this fact, and demanded a refund of the money paid on it. Within a short time thereafter the Bank of Kentucky, in accordance to the usual customary banking rules, returned the check to the Bank of Louisa, and again demanded a refund of the money paid on it. The Bank of Louisa refused, from which this litigation resulted.

The Bank of Kentucky insists that the law of the case is controlled by Farmers' National Bank of Augusta v. Farmers' & Traders' Bank of Maysville, 159 Ky. 141, 166 S. W. 986, L. R. A. 1915A, 77. The Bank of Louisa contends that it received and accepted the check from Banfield, the payee named in it, upon his authorized indorsement, made in its presence, and paid it to him as a bona fide holder so far as it was concerned, in good faith, and without knowledge of the fact that the check was a forgery. It cites to sustain its contention 3 R. C. L. p. 615, sec. 244, and cases cited, as the law of the case.

As defined by section 3720b-185, Ky. Statutes, "a check is a bill of exchange drawn on a bank payable on

demand.'' The rule that the drawee of a bill of exchange could not recover in an action for money had and received the amount paid out by him on the bill to which the name of the maker had been forged was first announced in 1762, in Price v. Neal, 3 Burr. 1355. In that case two bills of exchange had been paid by the drawee; the signature of the drawer having been forged. One was paid when it came due, without acceptance. The other was accepted and paid at maturity. When the forgery was discovered, an action was brought to recover back the money paid; it being admitted that both parties were equally innocent. The action was for money had and received in which no recovery can be had unless it is against equity and good conscience for the defendant to retain it. Lord Mansfield held, as there was no fraud or wrong, both parties innocent, the defendant having paid in good faith a valuable consideration, it was not unconscientious for the defendant to retain the money so received.

The principle applied in Price v. Neal has been adopted and followed generally by the courts of this country, and it is now firmly and universally recognized with certain equitable exception which the courts have grafted onto it.

This court recognized the principle of Price v. Neal, supra, in Deposit Bank of Georgetown v. Fayette National Bank, 90 Ky. 10, 13 S. W. 339, 11 Ky. Law Rep. 803, 7 L. R. A. 849, in 1890, prior to the enactment of the Negotiable Instrument Law in 1904. It, with its equitable exception, was applied in the case of Farmers' National Bank of Augusta v. Farmers' & Traders' Bank of Maysville, 159 Ky. 141, 166 S. W. 986, L. R. A. 1915A, 77, decided in 1914. The Negotiable Instrument Law was not discussed in it.

In Deposit Bank of Georgetown case, supra, the signature of the maker of eighteen checks was a forgery, but, before advancing money on the first check, the Fayette National Bank made inquiry as to the account of the drawer, and required identification of the person presenting and receiving the cash on it. In the case of Farmers' National Bank of Augusta v. Farmers' & Traders' Bank, supra, the signatures of the drawer and indorser were both forgeries, and the person presenting

the check and receiving the cash thereon was not identified, and the bank made no inquiry, and paid it without question. In the present case, it is agreed that the signature of the drawer to the $600 check was a forgery.

"'Forgery' is the false making or material alteration, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy." Davis v. Com., 217 Ky. 801, 290 S. W. 702. Section 3720b-23 of the Negotiable Instrument Law declares that: "Where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority."

It is not charged that Fred Banfield, the person who presented and chashed the check, was a fictitious person, or that he was not the person whose name appeared in the check as payee. His presentation of it to the bank for payment was the uttering by him of a forged instrument. See section 1189, Ky. Statutes. And, if he were not the person he represented himself to be, but was using a fictitious name, and procured Hughes to write a fictitious name as indorser of the check, he thereby committed the crime of forgery. Eldridge v. Com., 54 S. W. 7, 21 Ky. Law Rep. 1088; Hughes v. Com., 89 Ky. 227, 12 S. W. 269, 11 Ky. Law Rep. 424.

The stipulation of facts is silent as to whether he was the person he represented himself to be, and in this respect we are left to surmise and conjecture. This we are not prepared to engage in. For the purpose of the case, he may be regarded as the holder. As defined by section 3720b-190, Ky. Statutes, a "holder" means the payee or endorser of a bill or note, who is in possession of it, or the bearer thereof. The Bank of Louisa received and cashed it for him as a holder within the meaning of the above section. Its unrestricted indorsement and its mailing of the check for collection fixed upon it the liabilty and engagements imposed by sections 3720b-65,

3720b-66, only as to all subsequent holders. These sections, in parts, are in this language:

"Section 3720b-66. "Every endorser who endorses without qualification, warrants to all subsequent holders in due course:
"(1)  The matters and things mentioned in subdivisions one, two and three of the next preceding section."
Section 3720b-65. "(1)  That the instrument is genuine and in all respects what it purports to be.
"(2)  That he has a good title to it.
"(3)  That all prior parties had capacity to contract."

The express language of this section confines the indorser's liability and engagement only to subsequent holders. Appellant's indorsement and mailing of the check for collection to its correspondent was an act of negotiation within the meaning of section 3720b-30. This section defines the act of negotiation of such an instrument in this language: "An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof; . . . if payable to order, it is negotiated by the endorsement of the holder, completed by delivery." The acceptor's liability is fixed by section 3720b-62, which reads:

"The acceptor by accepting the instrument engages that he will pay it according to the tenor of his acceptance, and admits: (1)  The existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument; and (2)  The existence of the payee and his then capacity to endorse."

An acceptance within the meaning of this section is defined by section 3720b-190 to mean "an acceptance completed by delivery or notification." The acceptance of a bill is the signification of the drawee of his assent to the order of the drawer. Section 3720b-132 requires the acceptance to be in writing and signed by the drawee. "Where the holder of a check procures it to be accepted or certified, the drawer and all endorsers are discharged from liability thereon." See section 3720b-188. It is true, ordinarily, that the greater includes the less, and according to this principle, the payment of a check includes its acceptance. The acceptance by a drawee

must be in writing. The writing makes it assured of acceptance. This distinguishes the act of acceptance from the act of payment. Brannan's Negotiable Instrument Law (4th Ed.) sec. 30, p. 301. Neither subsection 62, 65, 66, or 188 of section 3720b, supra, deals with the act of payment nor undertakes expressly to fix the liability and engagements of the one to the other, after the act of payment by the paying drawee to the receiving holder, arising out of the acts of paying and receiving or vice versa. They deal with the negotiation of negotiable instruments, and cannot be interpreted and construed to mean that the act of payment by the drawee to the holder is the same as the act of acceptance or vice versa. To be a negotiable instrument by section 3720b-1, it must be in writing, signed by the maker or drawer. A forged instrument, not having been so signed, therefore, is not a negotiable instrument.

By virtue of section 3720b-65 supra, an indorser of a check does not warrant the signature of the drawer to the drawee who pays it; the drawer not being holder within the statutory definition thereof. The warranty embodied by the section, supra, runs in favor only of a subsequent holder in due course, Farmers' & Merchants' Bank v. Bank of Rutherford, 115 Tenn. 64, 88 S. W. 939, 112 Am. St. Rep. 817; Figuers v. Fly, 137 Tenn. 358, 193 S. W. 117; Brannan's Negotiable Instrument Law, sec. 66, p. 618, and not in favor of the drawee who is not such holder, Brannan's N. I. L. sec. 52, p. 372, for the reason the presentation for payment by the holder and the payment by the drawee to the holder is not a negotiation within the meaning of the sections supra. Brannan's N. I. L. (4th Ed.) sec. 30, p. 301. The payment by the drawee to the holder terminates the life of the instrument. American Hominy Co. v. Millikin Nat. Bank (D. C.) 273 F. 550. It ceases to be negotiable after its payment. Brannan's N. I. L. (4th Ed.) sec. 30, p. 301. But, whether the sections supra be construed to fix the liabilities and obligations of the drawee and the receiving holder as between themselves after the check has been paid by the drawee to the holder, or do not do so, an action by such drawee against such holder to recover the amount paid on it is in its nature an action for money had and received under a mistake of fact. Such action may be predicated upon either the bad faith or negligence of such holder who so contributed to induce such drawee to part with his money. South Boston Trust Co.

v. Levin, 249 Mass. 45, 143 N. E. 816. The fundamental basis of a recovery in such case is the act of bad faith or negligence of the holder as the primary cause of the loss. The check, its indorsement, and the act of presentation for payment by the holder, and its payment to him by drawee, in such cases are merely evidential, and not the essential basis of the action.

The ordinary principles fixing the liability of the defendant to the plaintiff in any other transaction in which at common law, acts of bad faith or culpable negligence, or both, may be alleged and proven to sustain a recovery, are applicable and control the rights of the parties. No provision of the Negotiable Instrument Law concerns such an action arising out of the negotiation of a forged instrument put into circulation by the acts of bad faith, or negligence of the holder thereof. To interpret it so as to protect a holder who had so induced the drawee to pay a forged instrument is beyond its intendment and plain language. So to construe it and apply it as to holder of a forged instrument as to protect him against his bad faith or his own negligence makes it applicable to a nonnegotiable instrument as well as to a negotiable instrument.

The question under consideration has been presented and decided by courts of foreign jurisdictions. As usual, they are not agreed as to the effect of the Negotiable Instrument Law on the doctrine of Price v. Neal, nor as to the application of its principles. Some of them hold that the provisions of the Negotiable Instrument Law adopt the rule in Price v. Neal, free from the exception which the courts have grafted onto it. Fidelity & Casualty Co. v. Planenscheck, 200 Wis. 304, 227 N. W. 387, 71 A. L. R. 331; National Bank v. M. A. National Bank, 148 Mo. App. 1, 127 S. W. 429; State Nat. Bank v. Bank of Magdalena, 21 N. M. 653, 157 P. 498, L. R. A. 1916E, 1296; Brannan's N. I. L. (4th Ed.) sec. 62, p. 556, and cases cited.

Others hold that the Uniform Negotiable Instrument Law is merely a legislative affirmation of the rule of Price v. Neal with the equitable exception. First Nat. Bank v. U. S. Nat. Bank, 100 Or. 264, 197 P. 547, 14 A. L. R. 479, and cases cited. Brannan's N. I. L. (4th Ed.) sec. 62, p. 664, and cases cited.

The exception rule to Price v. Neal is not expressly included in any provision of the Negotiable Instrument

Law. Nor is it abrogated by any of its express provisions. It is consistent, and in perfect harmony, with it. It should therefore be applied and enforced when the proven facts require it to effectuate and administer substantial justice. And, since we have recognized it in Deposit Bank of Georgetown v. Fayette National Bank and applied it in Farmers' National Bank v. Farmers' and Traders' Bank of Maysville, supra, it may now be rebarded as the law in this state in such cases.

The appellee, on presentation for payment of the $600 check, failed to discover it was a forgery. It was bound to know the signature of its customer, Armstrong, and it was derelict in failing to give his signature to the check sufficient attention and examination to enable it to discover instantly the forgery. The appellant, when the check was presented to it by Banfield, failed to make any inquiry of or about him, and did not cause or have him to be identified. Its act in so paying to him the check is a degree of negligence on its part equivalent to positive negligence. It indorsed the check, and, while such indorsement may not be regarded within the meaning of the Negotiable Instrument Law as amounting to a warranty to appellant of that which it indorsed, it at least substantially served as a representation to it that it had exercised ordinary care and had complied with the rules and customs of prudent banking. Its indorsement was calculated, if it did not in fact do so, to lull the drawee bank into indifference as to the drawer's signature to it when paying the check and charging it to its customer's account and remitting its proceeds to appellant's correspondent.

If in such transaction between the drawee and the holder of a check both are without fault, no recovery may be had of the money so paid. Deposit Bank of Georgetown v. Fayette National Bank, supra, and cases cited. Or the rule may be more accurately stated that, where the drawee pays the money, he cannot recover it back from a holder in good faith, for value and without fault.

If, on the other hand, the holder acts in bad faith, or is guilty of culpable negligence, a recovery may be had by the drawee of such holder. The negligence of the Bank of Louisa in failing to inquire of and about Banfield, and to cause or to have him identified before it parted with its money on the forged check, may be

regarded as the primary and proximate cause of the loss. Its negligence in this respect reached in its effect the appellee, and induced incaution on its part. In comparison of the degrees of the negligence of the two, it is apparent that of the appellant excells in culpability. Both appellant and appellee inadvertently made a mistake, doubtless due to a hurry incident to business. The first and most grevious one was made by the appellant, amounting to its disregard of the duty, it owed itself as well as the duty it owed to the appellee, and it cannot on account thereof retain as against the appellee the money which it so received. It cannot shift the loss to the appellee, for such disregard of its duty inevitably contributed to induce the appellee to omit its duty critically to examine the signature of Armstrong, even if it did not know it instantly at the time it paid the check. Farmers' Bank of Augusta v. Farmers' Bank of Maysville, supra, and cases cited.

The views of the trial court are in harmony herewith, and the judgment is therefore affirmed.